# BRACEWELL

February 5, 2019

**VIA ECF**

Honorable Alvin Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    United States v. Seabrook, 16 Cr. 467 (AJH)

Dear Judge Hellerstein:

We write in response to three points raised in the government's February 4, 2019 Sentencing Memorandum.

1. The government writes that what distinguishes Mr. Seabrook "is not his past record as a union leader, but his status as the only principle [sic] member of the kickback conspiracy not to have taken any responsibility for his actions" and argues that his failure to accept responsibility "counsels in favor of a significant sentence of incarceration." (Mem. at 2, 13.) But Mr. Seabrook should not be punished for exercising his Sixth Amendment rights. "A sentence imposed upon a defendant who stands trial is [the] norm; it is not an enhancement above the norm as a cost of standing trial." U.S. v. Cruz, 977 F.2d 732, 734 (2d Cir. 1992). The government enticed Mr. Rechnitz to plead guilty with the promise of a cooperation agreement and leniency and Mr. Huberfeld to plead guilty with a stipulated Guideline range of 6 to 12 months. Their "acceptance of responsibility" was part of the bargains that they struck. By proceeding to trial, the

**Paul Shechtman**
Partner

T: +1.212.508.6107    F: +1.800.404.3970
1251 Avenue of the Americas, 49th Floor, New York, New York 10020-1100
paul.shechtman@bracewell.com    bracewell.com

AUSTIN   CONNECTICUT   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   SAN ANTONIO   SEATTLE   WASHINGTON, DC

# BRACEWELL

February 5, 2019
Page 2

Guidelines have already deprived Mr. Seabrook of a three-point reduction for acceptance of responsibility (see U.S.S.G. §3E1.1); he should not be penalized further.

A thoughtful judge in the District of Columbia was confronted with an argument similar to the one that the government advances here. Faced with different Guideline calculations for different defendants who engaged in the same conduct, it balked:

> The notion that an ostensibly objective system of sentencing guidelines can produce such wildly varying results for essentially the same offense conduct is deeply troubling. . . . Taken at face value, [the government's] position could have a noticeable chilling effect on the exercise of one's right to a jury trial. While disparities in the ultimate sentence that result from cooperation "are not unreasonable," and it is "constitutionally prop[er]" for the government to "[f]ail[] to afford leniency to those who have not demonstrated those attributes on which leniency is based," United States v. Carter, 560 F.3d 1107, 1121 (9th Cir. 2009), the government cannot retaliate against defendant for exercising his rights. United States v. Mazzaferro, 865 F.2d 450, 460 (1st Cir. 1989). The Guidelines contain numerous provisions that account for leniency to be afforded to those who plead guilty or cooperate with the government.

United States v. Ring, 811 F. Supp. 2d 359, 365 (D.D.C. 2011).

2.  The government cites seven cases that it argues are "comparable" to Mr. Seabrook's. (Mem. at 14-15.) The only thing that seems to bind those cases together, however, is that, in almost all, the defendant was a public official -- something the government concedes Mr. Seabrook was not -- and the sentence imposed was long. None of the cases is particularly helpful to the Court. In United States v. Boyland, 11 Cr. 850 (E.D.N.Y.), for example, a former State Assemblyman received 168 months' imprisonment for his conviction on 21 counts -- including extortion, bribery, theft, honest services fraud, mail fraud, and conspiracy -- stemming from four separate criminal schemes. In United Sates v. Silver, 15 Cr. 093 (S.D.N.Y.), the former

# BRACEWELL

February 5, 2019
Page 3

New York State Assembly Speaker was convicted of seven counts related to two unlawful schemes, from which he personally obtained nearly $4 million. The one case the government cites that involves a labor union leader, United States v. Fazzolari, 17 Cr. 471 (S.D.N.Y.), resulted in a 37 month sentence, even though the defendant embezzled more than $1.3 million from his union's welfare benefit plan.

There are, however, cases that the government does not cite that counsel in favor of a less draconian sentence. In United States v. Smith, 15 Cr. 415 (S.D.N.Y.), the former president of a union was sentenced to a year and a day in prison on a Guideline range of 30 to 37 months for his involvement in a kickback scheme in which he received $151,481. In United States v. John McNamee, 12 Cr. 134 (S.D.N.Y), a union leader was sentenced to a year and a day on a Guideline range of 18 to 24 months for embezzling approximately $150,000 of union funds to pay for his personal expenses. And in United States v. Davis, 15 Cr. 700 (S.D.N.Y.), a former union president was sentenced to 15 months' imprisonment on a Guideline range of 21 to 27 months for embezzling approximately $150,000 from the union's checking account. In each of these cases, the court found that a below-guidelines sentence was sufficient. Comparing cases is a parlous endeavor, but the government has cherry-picked cases that are outside the norm.

3.   The Government asks that the Court "order restitution in the amount of $7 million, an amount that represents roughly one-third of COBA's loss as a result of a conspiracy that principally involved three persons: Seabrook, Rechnitz, and Huberfeld." (Mem. at 15-16.) Such an order would be improper for two reasons.

# BRACEWELL

February 5, 2019
Page 4

First, the government's narrative regarding COBA's investment in Platinum is incomplete and inaccurate. The relevant facts are these: On January 13, 2014, Platinum Partners made a presentation to COBA's Annuity Fund Board of Trustees. Following the presentation, the Board directed the Annuity Fund's lawyer, Howard Wein, and its investment advisor, Thomas Reynolds, to "perform due diligence and to report back to [Mr. Seabrook] with their results." (GX 310.) If the advisors "believed the investment to be prudent, [Mr. Seabrook] was authorized to invest up to ten million dollars." (GX 310.) Mr. Reynolds' due diligence came back unquestionably positive – Platinum was a "reputable firm" with a "five star fund rating" and solid returns. (GX 317.)

For his part, Mr. Wein raised four concerns that he outlined in letters to Mr. Seabrook and the Board dated February 14 and 18. (GX 1027, GX 1072, GX 318.) At 9 p.m. on February 18, Gilad Kalter, a Platinum employee, emailed that the lawyers were "working on a side letter addressing PIK. They dropped the first three points." (GX 1083.) Thus, as Mr. Kalter testified at trial, counsel for Platinum and the Annuity Fund negotiated and reached an agreement. (Tr. 290-291.) As a result, Mr. Wein drafted a resolution stating that "due diligence was performed and both fund counsel and the consultant advised that [investment in Platinum] would be prudent." (GX 319 (emphasis added).)[1] All four members of the Board then signed the resolution.

---

[1] The government asserts that because one of the letters Mr. Wein sent to Mr. Seabrook and the Board expressing his concerns was dated February 18, 2018, COBA's attorneys "did not drop their concerns about the investment." (Mem. at 5 & n.3.) But that is not correct. Mr. Kalter's email was sent at 9 p.m. on February 18, 2014, likely later in the day than Mr. Wein's letter. Additionally, Mr. Wein drafted the Board resolution approving the investment that states that "both

# BRACEWELL

February 5, 2019
Page 5

        The government's entire argument for holding Mr. Seabrook responsible for restitution revolves around the fact that he did not pass along the February 14 and February 18 letters to the Board. But as the facts above make clear, it was reasonable for him not to do so. The Board had delegated assessing the due diligence to him, and, after resolving initial concerns, Mr. Wein agreed with Mr. Reynolds that a Platinum investment would be prudent. The Board was told their conclusions and voted to approve. In short, holding Mr. Seabrook responsible for an unforeseeable loss would be hindsight bias at its worst. See Boyd, "Beware of Hindsight Bias," Psychology Today, Aug. 30, 2015 ("hindsight bias is the tendency to see events as being more predictable than they were before they took place").

        Second, the government, COBA, and Mr. Huberfeld appear to have agreed that splitting $21 million of restitution three ways would be a "a fair apportionment." (Mem. at 16.) We are not sure how that agreement was reached,[2] but it is not fair to Mr. Seabrook. As the government concedes, he had no knowledge that Platinum would file for bankruptcy, and he has no resources to compensate anyone. (Mem. at 16 & n.11.) Indeed, if the Court is partitioning, it should wait for the results of the trial of the six former Platinum executives accused of defrauding investors. If they caused Platinum's failure, Mr. Seabrook should not be punished for their

---

fund counsel and the consultant advised that such investment would be prudent." (GX 319.) If he hadn't "dropped [his] concerns," he wouldn't have drafted that sentence.

[2] In fact, we do not even know how the $21 million number was calculated, except that $19 million presumably is COBA's assumed loss and $2 million is some combination of attorneys' fees.

# BRACEWELL

February 5, 2019
Page 6

conduct.  See U.S. v. Speakman, 594 F.3d 1165, 1172 (10th Cir. 2010) (intervening causes can break the chain of causation under the MVRA").

Finally, we have received two additional letters in support of Mr. Seabrook; they are attached for the Court's review.

Respectfully submitted,

/s/ Paul Shechtman

Paul Shechtman
Maggie Lynaugh

PS/ML:wr