Electronically FILED by Superior Court of California, County of Los Angeles on 02/10/2020 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariscal,Deputy Clerk
20SMCV00216
Case 1:16-cr-00467-AKH   Document 320-1   Filed 04/29/20   Page 1 of 36
Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Marc Gross

1   Ronald Richards (SBN 176246)
        ron@ronaldrichards.com
2   Morani Stelmach, Esq. (SBN 296670)
        morani@ronaldrichards.com
3   LAW OFFICES OF RONALD RICHARDS &
    ASSOCIATES, A.P.C.
4   Mailing Address:
    P.O. Box 11480
5   Beverly Hills, California 90213
    Telephone: (310) 556-1001
6   Facsimile: (310) 277-3325

7

8   Geoffrey S. Long (SBN 187429)
        glong0607@gmail.com
9   LAW OFFICES OF GEOFFREY LONG, A.P.C.
    1601 N. Sepulveda Blvd., No. 729
10  Manhattan Beach, California 90266
    Telephone: (310) 480-5946
11  Facsimile: (310) 796-5663

12  Attorneys for Plaintiff VICTOR FRANCO NOVAL

13

14              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15          **FOR THE COUNTY OF LOS ANGELES – WEST DISTRICT**

16

17  VICTOR FRANCO NOVAL, an individual,

                                              Case No.
18                  Plaintiff,
                                              **VERIFIED COMPLAINT FOR:**
19          vs.
                                               (1) Fraud
20  JONA S. RECHNITZ, an individual;
21  RACHEL RECHNITZ, an individual;          (2) Civil Theft (*Penal Code,* § 496)
    JADELLE INC., a California corporation;
22  JADELLE JEWELRY AND DIAMONDS,            (3) Breach of Contract
    LLC, a Delaware limited liability company;
23  LEVIN PRADO aka LEVON PRADO, an          (4) Conspiracy to Commit Theft, Fraud,
    individual; XIOMARA CORTEZ, an               and Fraud by Concealment
24  individual and DOES 1-20.
                                              (5) Appointment of Receiver
25                  Defendants.

26

27

28

Plaintiff Victor Franco Noval ("Plaintiff" or "Franco") hereby alleges as follows:

**PARTIES**

1.    Plaintiff Victor Franco Noval ("Franco") is an individual residing in Beverly Hills, California in the County of Los Angeles.

2.    Defendant Jona S. Rechnitz ("Jona") is an individual who is residing in the County of Los Angeles in a rental house located at 9533 Sawyer St., Beverlywood area, City of Los Angeles.



3.    Defendant Rachel Rechnitz ("Rachel") is an individual who is residing in the County of Los Angeles in a rental house located at 9533 Sawyer St., Beverlywood area, City of Los Angeles. She is formerly known as Rachel Kahn.  Both Jona and Rachel advertise political and powerful celebrity connections to create a false sense of credibility about themselves and their business.  They post photos on social media of Kylie Jenner and Kim Kardashian, and Jona is seen with the mayor of New York and holding large amounts of United States Currency.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26
27
28



Seabrook, Exhibit A, p.3

COMPLAINT

4.     Defendant Jadelle Inc. ("Jadelle Inc.") is a California corporation whose principle office is in Beverly Hills and whose board member and President is Rachel.

5.     Defendant Jadelle Jewelry and Diamonds, LLC ("Jadelle LLC," collectively with Jadelle Inc., the "Jadelle Entities") is a Delaware limited liability company qualified to do business in California.  Rachel is the managing member of Jadelle LLC.

6.     Defendant Levin Prado aka Levon Prado ("Prado") is the agent for service of process, controller, and check signer for the Jadelle Entities.  It is alleged on information and belief that Prado has a girlfriend named Xiomara Cortez at the Wells Fargo Bank Beverly Hills branch who assisted him in furthering Rachel and Jona's fraud by stopping payment on checks and allowing numerous improper check transactions to occur on both of the Jadelle Entities' accounts.   Prado is displaying the sign he has indicated with his action towards Plaintiff and others as it relates to their goods and collateral.



Seabrook, Exhibit A, p.4

COMPLAINT

7.      Xiomara Cortez is an individual believed to reside in the County of Los Angeles who is employed at Wells Fargo Bank.  Cortez was instrumental in allowing Jona and Rachel's frauds to continue by keeping the current bank account open and by allowing Prado to continue to open up accounts and issue worthless instruments.



8.      The true names and capacities of defendants Does 1 through 20, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to show the true names and capacities of those defendants after they have been ascertained.  Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged in this complaint and that Plaintiff's damages as alleged in the Complaint were proximately caused by the acts or omissions of such defendant.

9.      Plaintiff is informed that, at all times mentioned in this Complaint, Defendants, and each of them, were the partners, joint venturers, agents, employees, alter egos, and representatives of each other in doing the things herein alleged and, in doing so, were acting within the scope of

COMPLAINT

their respective authorities as agents, employees and representatives, and are jointly and severally liable to Plaintiff.

10.     The alleged frauds committed by Jona were committed with Rachel's knowledge and direction, along with the assistance of Prado, making them personally liable.  Without Rachel setting upon the entities to commit the frauds, Jona lying to steal the collateral and loan proceeds, and Prado signing the checks, none of the below referenced offenses could have occurred.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this entire action because it is a civil action wherein the damages sought are in excess of the jurisdictional limits of this Court, and the Defendants are subject to personal jurisdiction in the State of California

12.     Defendants have conducted substantial business in the State of California, are registered and qualified to conduct business in the State of California, are California residents, and/or have purposefully directed tortious activities towards a California resident.

13.     Venue in this Court is proper pursuant to California *Code of Civil Procedure*, §§ 395 *et seq*. Venue of this action is in this Court and County because the obligations, acts and liabilities claimed in this action arose and the torts alleged herein took place in Los Angeles County and the parties reside in this County.

## GENERAL FACTUAL ALLEGATIONS

14.     On or about January 24, 2019, the Jadelle Entities, which are owned by Jona and Rachel, borrowed money from Plaintiff pursuant to a written agreement.  The terms of the written agreement were memorialized in a Debt Acknowledgment, Promissory Note and Security Agreement ("Debt Agreement") dated March 2019.  A true and correct copy of the Debt Agreement is attached hereto and incorporated herein as Exhibit "A".

15.     The original principal amount in the Debt Agreement is $2,850,000 at 9% interest per month, however, the total debt owed by Defendants later increased to $5,800,000.  The maturity dates are reflected in the Debt Agreement.

16.     Pursuant to the Debt Agreement, the loans were secured by jewelry delivered to

Franco and a 2012 Bugatti. Jona delivered the Bugati and the jewelry to Franco as security/collateral for the loan.

17.     After a series of further advance transactions, the debt on the loan grew to $5,800,000.

18.     The Bugati was liquidated and the funds were credited against principal for a total credit of $400,000.

19.     As background on Jona Rechnitz, a sealed information was filed against him in the Southern District of New York on June 6, 2016 for wire fraud. A copy of the information is attached hereto as Exhibit "B".

20.     Jona entered a guilty plea on June 6, 2016.

21.     On March 15, 2017, the information against Jona was unsealed. On March 15, 2017, Jona was released on bond pursuant to release conditions imposed by Judge Alvin K. Hellerstein.

22.     On December 6, 2019, Jona was sentenced to 10 months of custody. He was granted release pending appeal.

23.     The government in its sentencing memorandum indicated that "Rechnitz was in a position to cooperate regarding a broad range of subject matters in part because, for several years beginning when he was 26 years old in 2008, Rechnitz rode a wave of unbridled ambition and a seemingly limitless sense of entitlement through a series of misdeeds. Rechnitz had been a brazen criminal, and the seriousness of his crimes of conviction cannot, and should not, be minimized."

24.     Yet, apparently misunderstanding his role as a "one of the single most important and prolific white collar cooperating witnesses in the recent history of the Southern District of New York" according to the government, Jona mistakenly believes that this provides him immunity from committing fraud in California.

25.     No sooner than within weeks of being sentenced in the Southern District of New York, Jona swindled Franco in a large scale fraud totaling $5,800,000.   On information and belief, Jona and Rachel have defrauded other diamond dealers in Southern California and as those victims authorize the release of their names, the complaint will be amended to recover their stolen goods as well.

COMPLAINT

26.     At the time of the fraud, Jona Rechnitz was and still is a convicted felon from the Southern District of New York. He is presently out on bond for a wire fraud conviction where he was granted bail pending appeal. He is married to Rachel Rechnitz and they have six children together.

27.     They both now reside in a rental home in the Beverlywood area in the City of Los Angeles.

28.     Jona and Rachel operate a jewelry business through two similarly named entities, defendants Jadelle Inc. and Jadelle Jewelry and Diamonds, LLC, herein the Jadelle Entities, whose marque client is the Kardashian family.  Each of their clients will be added to this action as the facts unfold showing the stolen collateral was sold to retail customers of Jona and Rachel.

29.     The Debt Agreement between the parties was simple.  Jona tendered over $7,000,000 worth of diamonds to Plaintiff to be held as a collateral against a loan which totaled $5,800,000.

30.     In late December of 2019, AFTER, Jona was sentenced, Jona indicated to Franco that he was going to get a credit line and asked for the release of the diamond collateral in exchange for payment in full.  This representation by Jona was false when made.  Jona knew the representation was false when made.  Jona made this representation with the intention of causing Franco to rely on it.  Franco relied on this representation to his detriment.

31.     Jona persuaded Franco and Franco's brother to deliver the collateral to Jona and Rachel's office at 9454 Wilshire Blvd. in Beverly Hills.  Jona exchanged two checks payable to Franco in exchange for the diamond collateral dated January 14, 2020 and January 16, 2020 in the amounts of $2,500,000 and $1,300,000, respectively.  True and correct copies of said checks are attached hereto as Exhibit "C."  At the time Jona issued the checks to Franco he had no intention of honoring the checks.  Franco relied on Jona issuing and intending to honor the checks by releasing the diamond collateral.

32.     Plaintiff and Plaintiff's brother complied by exchanging the diamond collateral and Jona tendered two checks attached hereto as Exhibit "C".  The checks, however, were NSF at the time of tender.  Jona has repeatedly lied, lulled, and attempted to fabricate one excuse after another to delay paying Plaintiff.

COMPLAINT

33.     Based upon information and belief, Prado, acting in concert with Jona and Rachel, and to further their scheme, had his girlfriend or another representative at Wells Fargo Bank issue a stop payment on the checks, attached hereto as Exhibit "C", that Franco was going to deposit.

34.     Jona falsely enlisted attorneys to pretend payment on the loan was coming from family members to buy himself more time.  A number of these family members had written letters to the Court for Jona's sentencing.

35.     In reality, Jona liquidated Plaintiff's diamond collateral and spent Plaintiff's money, but refuses to tell Plaintiff how he liquidated the collateral or how he spent the loan proceeds.

36.     It is apparent that Jona is continuing his criminal conduct in California after being convicted in New York.

37.     Upon realizing he had been swindled and defrauded, Franco immediately filed a police report with the Beverly Hills Police.

38.     Repeated demands have been made to Jona to return the diamond collateral.  Jona, who wants to conceal his criminal conduct from the sentencing judge in New York and the federal prosecutors who vouched for him, as well as U.S. Probation, took numerous steps to lull the victim, Franco, to buy more time.

39.     On January 16, 2020, with the assistance of a local Beverly Hills attorney, Jona drafted more documents and an additional check, attached hereto as Exhibit "D" and Exhibit "E", to further stop Franco from disclosing and revealing that Jona's fraudulent conduct has only grown in scope and size and that he has learned nothing from his life of crime which spanned from 2011 to 2015, which then halted while he was cooperating from 2016 to 2018.

40.     The fact that Jona only received 10 months custody time with 5 months house arrest has only emboldened him to commit more fraud, grand theft, and to issue worthless instruments.

41.     The January 16, 2020 document requested that Franco keep Jona's fraud and breaches confidential until January 23, 2020.  Jona, however, did not comply with the January 16, 2020 agreement and no payments have been received.  Jona entered into the January 16, 2020 agreement without any intention of performing in order to delay Franco from seeking redress for the fraud and breaches.  Franco reasonably and detrimentally relied on the January 16, 2020

COMPLAINT

1  agreement.

2      42.    Jona then fired the Beverly Hills attorney and retained a new attorney on January 28,

3  2020, to resolve this matter.

4      43.    Jona's modus operandi in this fraud is to have numerous well-respected attorneys

5  contact Franco's counsel and advance Jona's false promises of repayment or outside funding along

6  with checks that either are NSF or which Jona had no intention of honoring.

7      44.    Jona directly, and through counsel, has been asked to disclose the location of the

8  diamond collateral and to provide a tracing and accounting of the loan proceeds.  Jona has refused

9  to do so.

10     45.    On information and belief, Plaintiff alleges that this is because Jona had pledged

11 diamonds to Franco that in fact were loaned to Jona and were not owned by Jona or Rachel.   Upon

12 discovering whose diamonds Jona had pledged, this Complaint will be amended to add that party as

13 they have Franco's collateral and hold it in constructive trust for Plaintiff's benefit.

14     46.    On information and belief, defendant Xiomara Cortez aided and abetted the

15 defendants in committing these frauds.  Defendant Cortez assisted in issuing checks, stopping

16 payment, and verifying funds, knowingly allowing Prado to issue numerous worthless checks and

17 never closed the accounts due to her romantic relationship with Prado.

18     47.    Jona, assisted by Rachel, have only become more emboldened in their frauds.  On

19 information and belief, they have taken goods on memo from various Southern California diamond

20 merchants.  Namely, Peter Marco, Moti Klein, and Julius Klein.  The video Jona showed at his

21 sentencing in federal court to the federal judge on December 19, 2019, with Kim Kardashian, was

22 most likely depicted stolen and fraudulently obtained goods from Plaintiff and various diamond

23 merchants.  The amount of losses to these various parties is alleged to be over $15,000,000.  They

24 are number other victims as well involved in various scams perpetrated by Jona. On information

25 and belief, they include Sotheby's, Leon Landver, Sam Gorodistian, Ben Adhoot, and Yehuda

26 Gamzo.  All the alleged victims have the same common pattern evidence used by Jona and Rachel

27 which is to have attorneys contact them, telling them they are getting paid according to Jona.

28     48.    On information and belief, Jona made numerous false statements to the federal

COMPLAINT

sentencing judge because by December 19 ,2019, Jona's frauds were well under way.  This house of fraudulent cards needs to be exposed as his growing victim list is becoming a community wide problem.  This lawsuit and other reports that have been filed, will hopefully bring this economic terrorist to justice and Plaintiff prays that this Court take appropriate access to find him financially responsible and appoint a receiver to halt what has now turned into outright theft of merchandise in the tens of millions of dollars afflicting Plaintiff and other victims.  As more come forward, Plaintiff will amend and add them to this complaint to turn this into a class if appropriate to stop this man and his wife.  Presently, Plaintiff is aware of other victims including Peter Marco, Julius Klein, and Moti Klein as well as multiple other victims including an active insurance investigation.

49.     Plaintiff immediately reported this matter to the Beverly Hills Police Department in the hope of stopping Mr. Rechnitz from further victimizing local residents and businesses.  The police have notified Plaintiff there are numerous other victims.  The filing of this action is intended to bring to light Rechnitz's frauds and have him exposed so no further innocent people are hurt by this economic terrorist.  At this point, Plaintiff has no realistic belief that Rechnitz will ever pay him back as the list of victims keeps growing.  At this point, Plaintiff only hopes no further persons are swindled by Jona, Rachel, and their team of thieves.

 

50.     On February 4, 2020, his newly retained criminal defense attorney in Los Angeles

COMPLAINT

sent a carefully scripted mass email to BCC'ing Jona's purported victims, attached as Exhibit "F" which reads as follows:

> We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any, equity, the family member has in it.

> If you are represented by counsel, please let us know and provide your counsel's contact information.  Our client's desire is to resolve this matter amicably.

This email comes after Jona had three previous reputable attorneys contact Plaintiff all relaying the same bogus and false words of hope.  This type of lulling is widely known under federal law.   The email carefully and correctly discloses that the law firm knows nothing of the veracity of the client directed statements and correctly distances the law firm of any endorsement of Jona's numerous attempts to use reputable attorneys to buy himself time.  It should be noted that each and every time the reputable attorneys Jona retained, correctly made it clear they were not endorsing or underwriting Jona's promises of repayment of the stolen funds or return of the stolen collateral.

51.     Jona and Rachel have directed numerous "lulling letters" in furtherance of their scheme to defraud. A lulling letter is "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make apprehension of the defendants less likely." *United States v. Manarite*, 44 F.3d 1407, 1412 (9th Cir.1995) (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974)); *United States v. Shaw* (9th Cir. 1996) 97 F.3d 1463.  The numerous exhibits attached to this complaint are all examples of lulling letters.  They display consciousness of Jona and Rachel's intent to defraud.

52.     On February 7, 2020, Plaintiff's counsel was contacted by two partners at Cohen Williams LLP that notwithstanding the February 4, 2020 email, they unfortunately had no further information to report.   Plaintiff's counsel asked them to stop contacting him regarding this matter as his client cannot psychologically handle further false promises, lies, and false rays of hope that Jona directs his attorneys to provide his various victims.  Plaintiff's counsel informed these fine

COMPLAINT

reputable attorneys not to update him further as he has moved on and that his client has zero belief Jona will ever pay him back.

53.     Plaintiff is hopeful that the publication of this action will cause more victims to not feel ashamed of being fleeced and to report these matters to the proper authorities.  Absent public awareness of Jona and his conspirator's frauds, he will keep stealing from people and hurting residents and businesses of Southern California.

54.     Jona is using his last cooperation in the Southern District of New York as some sort of ill-conceived immunity as part of the scheme. During the fraud, Jona has indicated that he was not concerned with any problems or things he has done because the FBI needs him as an informant so bad in the New York case where there are appeals they would never do anything to him no matter what he did.  This is of course is completely an ignorant and delusional view.  The FBI does not immunize crooks to steal simply because they cooperate in a case.  Jona uses this as a tool to further his scheme to defraud.

55.     Numerous victims have been interviewed in this matter.  On information and belief, as to the Sotheby's fraud, Jona falsely represented to Sotheby's he was entitled to diamonds given to Sotheby's for auction, Jona secretly picked them up and has dissipated the assets.   The total loss was $3,000,000.00.  Just adding up all the victims the Plaintiff's law firm has interviewed the losses exceed $15,000,000.  The Plaintiff is encouraging all victims of Jona and Rachel to come forward immediately and to stop believing they are going to get paid.

## FIRST CAUSE OF ACTION

### FRAUD AGAINST ALL DEFENDANTS

56.     Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

57.     The foregoing representations made by Jona, Rachel, and the other Defendants were false when they were made, and Defendants knew the representations to be false.  Defendants did not intend to comply with the promises and representations when they were made.

58.     The foregoing representations were made by Jona, Rachel, and Defendants with the intent to deceive Plaintiff and with knowledge that Plaintiff would rely on them.

COMPLAINT

59.   Plaintiff detrimentally and reasonably relied on the foregoing representations.

60.   Plaintiff has been damaged by Defendants' false, intentional, and fraudulent representations and concealing of material information, as alleged above, in an amount to be proven at trial, but at least $7,000,000, which represents the collateral Jona lied to steal as well as tendered worthless instruments for.

61.   Plaintiff further requests the imposition of a constructive trust against all Defendants who are in possession of the diamond collateral set forth in the Debt Agreement and for an order and judgment that they hold the diamond collateral and/or all proceeds therefrom as constructive trustees for the benefit of Plaintiff.

62.   In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiff.  Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct

## SECOND CAUSE OF ACTION

### CIVIL THEFT (Cal. *Penal Code,* § 496) AGAINST ALL DEFENDANTS

63.   Plaintiff hereby incorporates by reference as though fully set forth in full herein, all preceding Paragraphs of this Complaint.

64.   As a result of Jona and Defendants' conduct as alleged herein, they have violated California *Penal Code,* section 496.

65.   California *Penal Code,* section 496, provides, "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, if such person has no prior convictions

COMPLAINT

for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290.

66.     Jona and Defendants have obtained and received property from Plaintiff, the $5,800,000, in a manner constituting "theft," as that term is defined in California *Penal Code,* section 484(a), "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

67.     As a direct and proximate result of Defendants' civil theft, Plaintiff has been damaged in an amount to be proven at trial, but at least $7,000,000.

68.     Pursuant to California *Penal Code,* section 496(c), Plaintiff is also entitled to recover treble damages from Defendants.

69.     Pursuant to California *Penal Code,* section 496(c), Plaintiff is also entitled to recover attorneys' fees from Defendants.

70.     Plaintiff further requests the imposition of a constructive trust against all Defendants who are in possession of the diamond collateral set forth in the Debt Agreement and for an order and judgment that they hold the diamond collateral and/or all proceeds therefrom as constructive trustees for the benefit of Plaintiff.

71.     In doing the things herein alleged, Defendants acted willfully, maliciously, and with the intent to cause injury and harm to Plaintiff.  Defendants are therefore guilty of malice and/or fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and deter them and others from engaging in similar misconduct

COMPLAINT

1

**THIRD CAUSE OF ACTION**

2

**BREACH OF CONTRACT AGAINST ALL DEFENDANTS**

3      72.      Plaintiff hereby incorporates by reference as though fully set forth in full herein, all

4   preceding Paragraphs of this Complaint.

5      73.      Plaintiff has duly performed all of his obligations, terms, and conditions of the Debt

6   Agreement, except to the extent that his performance has been waived, prevented or excused by the

7   acts, conduct and/or omissions of Defendants.

8      74.      All conditions for Defendants' performance on the Debt Agreement have occurred.

9      75.      Defendants are in breach of the Debt Agreement by failing and refusing to pay

10   Plaintiff all amounts due thereunder and by failing to provide Plaintiff with the collateral required

11   thereunder.

12      76.      As a direct and proximate result of the acts, omissions, and breaches of the Debt

13   Agreement by Defendants, as alleged herein, Plaintiff has suffered damages in a specific amount to

14   be determined at trial, but in the amount of at least $7,000,000.

15

**FOURTH CAUSE OF ACTION**

16

**CIVIL CONSPIRACY TO COMMIT THEFT, FRAUD, AND FRAUD BY**

17

**CONCEALMENT AGAINST ALL DEFENDANTS**

18      77.      Plaintiff hereby incorporates by reference as though fully set forth in full herein, all

19   preceding Paragraphs of this Complaint.

20      78.      Jona, Rachel, and Prado conspired to make an illegal agreement to defraud Franco

21   of his loan proceed and his collateral and to commit civil theft.

22      79.      Jona, with his wife Rachel, have set up serial bogus companies to solicit loans based

23   upon the false premise they have collateral.  Meanwhile the collateral is already pledged to a third

24   party or Jona and Rachel have concocted lies to get it back, using Prado as their patsy to sign checks

25   on their corporate checking accounts.

26      80.      Franco is informed, believes, and thereupon alleges that at all times relevant hereto,

27   Defendants, including but not limited to Jona, Rachel, and Prado, formed a civil conspiracy and

28   engaged in the foregoing acts in operation and furtherance of that conspiracy.

COMPLAINT

81.     Plaintiff is informed, believes, and thereupon alleges that at all times relevant hereto, Defendants committed the foregoing misrepresentations, wrongs, theft, and fraud for the purpose and in furtherance of a fraudulent conspiracy and scheme to defraud Plaintiff, as alleged herein.

82.     As a result of the civil conspiracy, each and every Defendant is liable and responsible for the acts of the other Defendants in furtherance of the conspiracy and all damages resulting therefrom.

83.     As a result of the civil conspiracy, Defendants are jointly and severally liable for $7,000,000.

84.     The egregious nature of the Defendants/conspirators' collective conduct is malicious, wanton, and willful.  Plaintiff needs to be awarded punitive damages plus a judgment of joint and several liability.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Franco seeks a judgment in her favor and an order granting the following relief:

1.     That Plaintiff be awarded compensatory damages in the amount of at least $7,000,000;

2.     That Plaintiff be awarded treble damages pursuant to California *Penal Code, section 496(c)*;

3.     That Plaintiff be awarded reasonable attorneys' fees pursuant to California *Penal Code, section 496(c)*;

4.     For a constructive trust over the diamond collateral and all proceeds therefrom;

5.     That Plaintiff be awarded punitive damages in an amount to be proven at trial;

6.     For a receiver to be installed into both defendant companies and personal estates to marshal the remaining assets;

7.     That Plaintiff be awarded costs of suit; and

8.     That Plaintiff be awarded such further relief as the Court deems just and proper.

COMPLAINT

1

DATED: February 8, 2020

LAW OFFICES OF RONALD RICHARDS
& ASSOCIATES, A.P.C.

2

3

By: ___/s/ Ronald Richards_____

4

Ronald Richards
Attorneys for Plaintiff Victor Franco Noval

5

6

LAW OFFICES OF GEOFFREY LONG, A.P.C.

7

8

By:     _/s/ Geoffrey Long_____

Geoffrey Long
Attorneys for Plaintiff Victor Franco Noval

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

**VERIFICATION**

I, Victor Franco Noval, declare:

I have read the foregoing complaint and know the contents thereof.

I am informed and believe based on information provided to me, materials I have reviewed, and my personal knowledge that the matters stated in are true and accurate to the best of my knowledge except where I indicated they are based upon information and belief.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct, and that this verification to this complaint was executed this 9th day of February, 2020, in Beverly Hills, California.

_____
Victor Franco Noval

COMPLAINT

# EXHIBIT A

**DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT**

DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT, is made this ___ day of March, 2019, by and between Jadelle Jewelry and Diamonds, LLC, a Delaware limited liability company, located at 9454 Wilshire Boulevard, Penthouse #1, Beverly Hills, CA 90210 ("Jadelle") and Victor Franco Noval, an individual with an address of 1141 Summit Drive, Beverly Hills, CA 90210 ("Noval"). Jadelle and Noval are hereinafter referred to collectively as "the Parties".

WHEREAS Noval has made loans in the aggregate amount of $2,850,000.00 to Jadelle;

NOW, THEREFORE, in consideration of the foregoing, the representations, warranties, covenants and agreements hereinafter set forth, the loans previously advanced to Jadelle and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby mutually agree as follows:

**ACKNOWLEDGEMENT**

1.      Jadelle does hereby confirm and acknowledge that has received the followed loan amounts from Noval:

   a.  On January 24, 2019, the sum of $1,100,000.00;
   b.  On February 27, 2019, the sum of $750,000.00;
   c.  On March 8, 2019, the sum of $400,000.00; and
   d.  On March 26, 2019, the sum of $600,000.00.

**TERMS OF PAYMENT**

2.      Interest: Commencing on the date hereof, Jadelle shall pay to Noval, interest on the full outstanding balance, accruing at a rate of nine percent (9%) per annum, which shall be payable in monthly installments on the first business day of each month, commencing April 1, 2019.

3.      Maturity Date: The full balance of all sum outstanding shall be due on the date that is six (6) months from the date of each advance as set forth in ¶ 1 above.

4.      Extension: The term of this loan may be extended by mutual agreement of the Parties.

**GUARANTEE AND SECURITY**

5.      The payment obligations set forth herein are secured by jewelry which Jadelle has provided to Noval and which Noval is holding in its possession as collateral for the amounts due hereunder. In addition thereto, the obligations of Jadelle are further secured by its pledge of

$400,000.00 in value of that certain 2012 Bugatti vehicle presently stored in a garage owned and operated by Noval.

## SEVERABILITY

6.      In the event any provision of this Agreement is deemed to be void, invalid, or unenforceable, that provision shall be severed from the remainder of this Agreement so as not to cause the invalidity or unenforceability of the remainder of this Agreement. All remaining provisions of this Agreement shall then continue in full force and effect. If any provision shall be deemed invalid due to its scope or breadth including, but not limited to, the interest rate set forth herein, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

## MODIFICATION

7.      Except as otherwise provided in this document, this agreement may be modified, superseded, or voided only upon the written and signed agreement of the Parties. Further, the physical destruction or loss of this document shall not be construed as a modification or termination of the agreement contained herein.

## EXCLUSIVE JURISDICTION FOR SUIT IN CASE OF BREACH

8.      The Parties, by entering into this agreement, submit to jurisdiction in State of New York for adjudication of any disputes and/or claims between the parties under this agreement. Furthermore, the parties hereby agree that the courts of State of California shall have exclusive jurisdiction over any disputes between the parties relative to this agreement, whether said disputes sounds in contract, tort, or other areas of the law.

9.      This Agreement shall be interpreted under, and governed by, the laws of the state of California.

IN WITNESS WHEREOF, this DEBT ACKOWLEDGEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT has been duly executed by or on behalf of the parties hereto as of the date first above written.

**Borrower**
*Jadelle Jewelry and Diamonds, LLC*

By:     Levin Prado
Its:     Authorized Signatory

**Lender**

Victor Franco Noval

# EXHIBIT B

Seabrook, Exhibit A, p.23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :       SEALED INFORMATION
                                :
        - v. -                  :       16 Cr.
                                :
JONA RECHNITZ,                  :       **16 CRIM 389**
                                :
                Defendant.      :
                                :
- - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 6/6/16

## COUNT ONE

The United States Attorney charges:

1.    From in or about 2011, up to and including in or
about 2015, in the Southern District of New York and elsewhere,
JONA RECHNITZ, the defendant, and others known and unknown,
willfully and knowingly did combine, conspire, confederate, and
agree together and with each other to violate Title 18, United
States Code, Sections 1343 and 1346.

2.    It was a part and an object of the conspiracy that
JONA RECHNITZ, the defendant, and others known and unknown,
willfully and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and to deprive the public of its
intangible right to the honest services of law enforcement and
other public officials, would and did transmit and cause to be
transmitted by means of wire communication in interstate and
foreign commerce, writings, signs, signals, pictures, and sounds
for the purpose of executing such scheme and artifice, in violation

JUDGE SULLIVAN

of Title 18, United States Code, Sections 1343 and 1346, to wit, RECHNITZ, and others known and unknown, provided financial and personal benefits and political contributions to public officials, including law enforcement officials, in exchange for official action as requested by RECHNITZ and others, and as opportunities arose, and in connection therewith and in furtherance thereof, RECHNITZ, and others known and unknown, transmitted and caused to be transmitted interstate, e-mails, telephone calls, and electronic wire transfers of funds.

3.    It was also a part and an object of the conspiracy that JONA RECHNITZ, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the members of the Corrections Officers' Benevolent Association ("COBA"), the union which represents the corrections officers of New York City, of their intangible right to the honest services of a senior COBA official, who was also a corrections officer (the "COBA Official"), would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, RECHNITZ facilitated the payment of approximately $60,000 to the COBA

2

Official on behalf of a hedge fund operator in exchange for the COBA Official's direction of an investment of union funds in the hedge fund, and in connection therewith and in furtherance thereof, RECHNITZ, and others known and unknown, transmitted and caused to be transmitted interstate, e-mails, telephone calls, and electronic wire transfers of funds.

(Title 18, United States Code, Section 1349.)

### FORFEITURE ALLEGATION

4.     As a result of committing the offense alleged in Count One of this Information, JONA RECHNITZ, the defendant, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the offense alleged in Count One of the Information.

### Substitute Asset Provision

5.     If any of the above-described forfeitable property, as a result of any act or omission of JONA RECHNITZ, the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

3

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981, Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461.)

PREET BHARARA
United States Attorney

4

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JONA RECHNITZ,

Defendant.

SEALED INFORMATION

16 Cr.

(Title 18, United States Code, Section
1349.)

PREET BHARARA
United States Attorney.

# EXHIBIT C

## WELLS FARGO BANK

8820

WILSHIRE CRESCENT  9454 WILSHIRE BLVD  BEVERLY HILLS, CA 90212

11-4288/1210

DATE  1/16/20

PAY TO THE ORDER OF  Franco Noval

$ 1,300,000.00

one million Three hundred

DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

Levi Prado

LOAN REPAYMENT

⑆121042882⑆864⑆         ⑈8820

## WELLS FARGO BANK

8817

WILSHIRE CRESCENT  9454 WILSHIRE BLVD  BEVERLY HILLS, CA 90212

11-4288/1210

DATE  1/14/20

PAY TO THE ORDER OF  Franco Noval

$ 2,500,000.00

Two million Five hundred Thousand

DOLLARS

JADELLE JEWELRY AND DIAMONDS, LLC
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931

Levi Prado

LOAN REPAYMENT

⑆121042882⑆864         ⑈8817

# EXHIBIT D

Seabrook, Exhibit A, p.31

This document is to memorialize the current relationship between the parties. It is not intended to create a forbearance or an extension of credit of any kind.

On January 16, 2020, Jonah reached out to me to resolve this matter. On the advice of counsel, I disclosed to Jonah that I had filed a police report against Jonah on January 15th, 2020 for fraud and grand theft. I told Jonah that he needs to pay me independently and apart from any reports I filed and that at no time have I used the filing of the report to resolve this matter.   Besides disclosing to Jonah that I did file the report after he reached out to me to resolve this matter, I made no other characterizations or comments about the report but I was advised that Jonah should know that one was in fact filed.

Per my request I have asked Jonah to issue a new replacement check for $4.5m dated January 22, 2020. Jonah has represented he does not have the funds in his account at the time this replacement was issued. Noval is acknowledging this. Jonah intends on using his best efforts to have the funds by January 22, 2020.  I agree not to deposit the new replacement check for 4.5MM until Thursday Jan 23, 2020.

I have agreed and have instructed my associates to refrain from discussing anything with the press or anyone unless the check gets returned or bounces for Stop Payment or NSF on the agreed upon deposit date.  I will honor his request assuming he follows through with his above representations.

I agree to keep all matters confidential between the parties involved and will hold on any further reports until January 23, 2020 as long as the terms of this agreement are met.

Sincerely,

Victor Franco Noval                    1/15/2020        1/16/20

I, Jonah Rechnitz, have read the above facts and representations in this document. I agree they are accurate.

Jonah Rechnitz                          Date    1/16/20

# EXHIBIT E

Seabrook, Exhibit A, p.33

# WELLS FARGO BANK

8823

WILSHIRE CRESCENT   9354 WILSHIRE BLVD   BEVERLY HILLS, CA 90212

DATE 1-22-20

11-4288/1210

PAY TO THE ORDER OF  Franco Noval                              $ 4,500,000.00

Four million Five hundred Thousand —                    DOLLARS

**JADELLE JEWELRY AND DIAMONDS, LLC**
9454 WILSHIRE BLVD PH G01
BEVERLY HILLS   CA 90212-2931



LOAN REPAYMENT

Seabrook, Exhibit A, p.34

⑈121042882⑈8649⑆        ⑈8823

# EXHIBIT F

Seabrook, Exhibit A, p.35

**Ronald Richards**

| | |
|---|---|
| **From:** | Reuven Cohen <rcohen@ |
| **Sent:** | Tuesday, February 4, 2020 9:40 PM |
| **To:** | Reuven Cohen; Marc Williams |
| **Subject:** | Jona Rechnitz |

We write with an update on Jona Rechnitz. A family member of Mr. Rechnitz has informed our law firm that the family member is seeking to refinance certain real property in order to satisfy Mr. Rechnitz's outstanding liabilities. We currently have no visibility into the family member's interest in the property, the value of the property, or what, if any, equity, the family member has in it.

If you are represented by counsel, please let us know and provide your counsel's contact information.

Our client's desire is to resolve this matter amicably.

Sincerely,

Reuven L. Cohen
Cohen Williams LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel:  213-232-5163
Fax:  213-232-5167
rcohen@
www.cohen-williams.com