UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
UNITED STATES OF AMERICA,

           -against-

NORMAN SEABROOK,

                       Defendant.

------------------------------------------------------------ X

**ORDER & OPINION DENYING MOTION TO COMPEL PRODUCTION**

16 Cr. 467 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant Norman Seabrook in five successive submissions demands the Government to produce certain materials purportedly under the Second Circuit's recent decision in *United States v. Stillwell*, 986 F.3d 196 (2d Cir. 2021). *See* ECF Nos. 373, 378, 380, 394, 398. The Government opposes, arguing that the *Stillwell* decision is inapposite and that the materials at issue do not give rise to the Government's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and related cases. *See* ECF No. 387. For the reasons that follow, Seabrook's motion is denied.

## BACKGROUND

On August 15, 2018, a unanimous jury convicted Seabrook of one count of honest services wire fraud under 18 U.S.C. § 1349 and one count of conspiracy under 18 U.S.C. §§ 1343, 1346.[1] Seabrook's convictions stemmed from a bribery scheme during his tenure as the president of the Correction Officers' Benevolent Association ("COBA"), the nation's largest correction officers' union. Pursuant to the bribery scheme, Seabrook cause COBA to invest $2 million, substantially all of COBA's pension fund including reserves, into Platinum Partners

---

[1] The Court assumes familiarity with the factual background of this case and the evidence adduced at trial. The following discusses only the facts necessary to resolve the pending motion.

L.P. ("Platinum"), a hedge fund, in three tranches over the course of 2014. In exchange for the investment, Seabrook was promised a share of the yearly revenue that Platinum expected to gain from the investment. Several months after the investment was made, the promise to Seabrook was reduced to $100,000. In December 2014, Seabrook was paid $60,000 in cash. The kick-back bribe was advanced by Jona Rechnitz and paid by Murray Huberfeld, one of Platinum's principals. Platinum failed and entered bankruptcy, and COBA lost approximately $19 million of the $20 million invested. The Court sentenced Seabrook to 58 months in custody, three years of supervised release, and full restitution of $19 million to be paid jointly with Huberfeld and Rechnitz.

Almost three years after Seabrook's conviction and shortly before his reporting date to the Bureau of Prisons, Seabrook filed a number of letter submissions to compel the production of allegedly exculpatory and impeaching materials. *See* ECF Nos. 373, 378, 380, 394, 398. On April 9, 2021, Seabrook sought the production of Form 302 FBI reports and interview notes relating to Philip Banks, Murray Huberfeld, William Kwasnicki, Thomas Farrell, Robert Bishop, and Julio Lopez, people with whom Rechnitz was involved, but none of whom was a witness in the case against Seabrook. *See* ECF No. 373. Four days later, Seabrook added Mayor Bill de Blasio to the list, with whom Rechnitz also was involved. *See* ECF No. 378. On April 22, Seabrook also demanded production of certain of Platinum's audit reports to show that he received misleading information concerning Platinum, which supposedly formed the allegations of a pending lawsuit against Platinum. *See* ECF No. 380. Seabrook based his demands on *United States v. Stillwell*, mentioned earlier in this decision.

**DISCUSSION**

As a threshold matter, Seabrook's reliance on *Stillwell* is misplaced. The district court, in that case, granted a sealed *ex parte* order allowing the Department of Justice's Narcotic and Dangerous Drug Section ("NDDS") to withhold classified materials from both the United States Attorney's Office for the Southern District of New York ("U.S. Attorney's Office") and defense counsel. *See Stillwell*, 986 F.3d at 199. After defendants appealed their convictions, the NDDS notified the Second Circuit of the sealed *ex parte* order. *See id.* at 200–01. The Second Circuit vacated the district court's order and instructed disclosure of the materials, first to the U.S. Attorney's Office and then to defense counsel. *See id.* at 201. When disclosure concluded, defendants raised a new claim before the Second Circuit that the Government withheld exculpatory information in violation of *Brady*, 373 U.S. 83. *See Stillwell*, 986 F.3d at 199. The Second Circuit "decline[d] to pass on" defendants' *Brady* claims and remanded the case for the district court to consider their merits in the first instance. *See id.* at 202.

Seabrook fails to explain how *Stillwell* is relevant. *Stillwell* dealt with an issue plainly not present in this case, an *ex parte* request to bar the U.S. Attorney's Office and defense counsel from viewing certain documents. Second, *Stillwell* did not make substantive rulings; the Second Circuit declined to consider any *Brady* issues and remanded the case to the district court to consider if *Brady* applied. *Stillwell* does not support Seabrook's demands.

The law regarding the Government's disclosure obligations is well-established. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* claim, "a defendant must show that: (1) the [prosecution], either willfully or

inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001); *see also Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

The Government's disclosure obligation under *Brady* extends only to information that is "material." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). For a finding that the undisclosed evidence is "material," a defendant must show that "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, ––– U.S. ––––, 137 S. Ct. 1885, 1893 (2017) (quoting *Cone v. Bell*, 556 U.S. 449, 469–70 (2009)). "A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Id.* (internal quotation marks omitted) (quoting *Kyles*, 514 U.S. at 434); *see also Strickler*, 527 U.S. at 281 ("There is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); *Fuentes v. T. Griffin*, 829 F.3d 233, 245–47 (2d Cir. 2016) ("[T]he *Brady* materiality 'question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" (quoting *Kyles*, 514 U.S. at 434)).

Undisclosed impeachment evidence concerning a government witness is viewed as material "where the witness in question supplied the only evidence linking the defendant to the crime." *United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998); *see also Boyette v. LeFevre*, 246 F.3d 76, 93 (2d Cir. 2001) (undisclosed impeachment evidence was material where the witness's identification testimony was the only evidence against defendant); *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) ("In general, impeachment evidence has been found to

be material where the witness at issue supplied the only evidence linking the defendant(s) to the crime . . . ." (citation and internal quotation marks omitted)). By contrast, "where ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial." *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998); *United States v. Wong*, 78 F.3d 73, 80 (2d Cir. 1996) (finding that undisclosed evidence not material where the defense already had sufficient evidence of witness's "mendacity, interest[,] and bias").

Notably, *Brady* does not demand an "open file" policy or give defendant the right to search through the Government's files for potentially relevant information. *See Kyles*, 514 U.S. at 437. "Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Where there is a specific reason to believe that a government file contains exculpatory material, the district court may conduct an *in camera* review of the file. *See United States v. Kiszewski*, 877 F.2d 210, 216 (2d Cir. 1989) (remanding for *in camera* review of agent's personnel file to determine whether it contained material impeachment information); Gordon Mehler, *et al.*, Federal Criminal Practice: A Second Circuit Handbook § 18-5, at 326 (15th ed. 2015). However, this obligation arises only in "rare circumstances." *United States v. Leung*, 40 F.3d 577, 583 (2d Cir. 1994) ("In the rare circumstances where such inspection is required, its purpose is not to provide a general discovery device for the defense; criminal defendants have no constitutional right to know the contents of Government files in order to present arguments in favor of disclosure."); *see also Ritchie*, 480 U.S. at 58 n.15 ("[Defendant], of course, may not require the trial court to search through the

[prosecution's files] without first establishing a basis for his claim that it contains material evidence."); Federal Criminal Practice: A Second Circuit Handbook § 18-5, at 326.

Here, Seabrook claims that the documents at issue are "material" because they may reveal (i) that he "relied on false or misleading financial statements" and "acted in good faith" in investing the COBA funds and (ii) that Jonah Rechnitz, a government witness, "enjoyed a poor reputation for the character traits of truthfulness and honesty."[2] ECF No. 394, at 1. Neither argument is availing.[3]

First, Seabrook's supposedly "good faith" belief that Platinum was a good investment for all, or substantially all, of COBA's money is irrelevant to the crimes of which he was charged and convicted. "In addition to the deprivation of money or property, the deprivation of the intangible right of honest services also falls within the purview of the [wire fraud] statute." 62 Am. Jur. 2d Postal Service § 132 (quoting 18 U.S.C. § 1346). To succeed on an honest services theory, the Government is not required to prove that the fraudulent scheme was successful. *See Pasquantino v. United States*, 544 U.S. 349, 371 (2005) ("[T]he wire fraud statute punishes the scheme, not its success."). The key inquiry, rather, is whether the Government may prove "the existence of a *quid pro quo* agreement—that the defendant received, or intended to receive, something of value in exchange for an . . . act." *United States v. Silver*, 864 F.3d 102, 111 (2d Cir. 2017). As the Supreme Court explained, "[e]ven if the scheme

---

[2] Seabrook seems to suggest that the Government's files may contain undisclosed impeaching evidence against other government witnesses. *See* ECF No. 394, at 1. However, Seabrook has not substantiated this allegation in any of his submissions.

[3] The Court need not address the Government's contention that certain documents that Seabrook seeks to obtain are not in its "possession." ECF No. 387, at 4–6 (citing *Avellino*, 136 F.3d at 255). As discussed *infra*, even if the documents in question are in the Government's possession, Seabrook has not shown any basis that such documents would be "material." *United States v. Agurs*, 427 U.S. 97, 108 (1976). The Court would note, however, that the Government has represented that "[i]n all instances, what SDNY received from EDNY prosecutors from the search was made available to counsel for Seabrook and Huberfeld in its entirety." ECF No. 387, at 3.

occasioned a money or property *gain* for the betrayed party, courts reasons, actionable harm lay in the denial of that party's right to offender's 'honest services.'" *Skilling v. United States*, 561 U.S. 358, 130 (2010) (emphasis added). Because Seabrook's purported "good faith" does not implicate his culpability in the crimes of honest services fraud or conspiracy, the Court cannot find a "reasonable probability that the [materials in question] would have produced a different verdict." *Strickler*, 527 U.S. at 281.

Second, "ample ammunition" exists and had been deployed at trial to attack Rechnitz's credibility. *Orena*, 145 F.3d at 559. As detailed in the Court's order dated June 25, 2020 (ECF No. 325), both Seabrook's counsel and the Government highlighted Rechnitz's extensive history of fraudulent conduct at trial. On direct examination, Rechnitz admitted lying to law enforcement officials, Trial Tr. (Aug. 7, 2018), ECF No. 242, at 555:4-5; failing to report revenue and income, *id*. at 555:11-14; fostering illegal relationships with members of the New York City Police Department, *id*. 555:25-556:1; bribing New York police officers in exchange for illegal privileges, *id*. at 575:19-22, 579:1-12; bribing New York politicians to secure access and the promise of future benefits from said politicians and their staffs, Trial Tr. (Aug. 8, 2018), ECF No. 244, at 601:13-605:16; violating various election laws by fundraising by way of "straw donors," *id*. at 609:12-16; procuring a police chaplaincy without having religious credentials and solely for purposes of obtaining prestige and privilege, *id*. at 614:11-616:19; and lying about owning certain properties to impress others, *id*. at 626:10-12. On cross examination, the defense elicited testimony from Rechnitz that detailed instances in which Rechnitz reported a $59,000 watch lost, received proceeds from his insurance to cover the loss, found the watch, and did not notify his insurance company, *id*. at 762:14-764:20; fraudulently obtained a group insurance policy for his family, *id*. at 765:7-767:19; submitted false documents in a firearm application, *id*.

at 781:5-14; pretended to hold no interest in a real estate property when in fact he did hold an interest to deceive the property's tenant in a purchase negotiation, *id*. at 783:12-784:15; gave Christmas presents and jewelry to a police officer's family in exchange for a private police escort to the airport and a dedicated private lane in a crowded tunnel, *id*. at 788:17-791:1; and even claimed that his grandparents were Holocaust survivors to mislead FBI investigators in their investigation of his illegal relationships with police officers, *id*. at 791:17-792:16.

In light of this extensive record of impeaching conduct, the materials that Seabrook now seeks, even if they contain any undisclosed evidence, would be "cumulative and hence immaterial." *Orena*, 145 F.3d at 559. Seabrook had more than sufficient evidence of Rechnitz's "mendacity, interest[,] and bias." *Wong*, 78 F.3d at 80; *see also Payne*, 63 F.3d at 1210 ("[*Brady* violation is not found] when the testimony of the witness is 'corroborated by other testimony' or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." (citations omitted)); *accord United States v. Jackson*, 345 F.3d 59, 74 (2d Cir. 2003).

Accordingly, Seabrook has not established that any of the documents of which he demands production is "material" within the meaning of *Brady*, *Giglio*, and related authorities. The Court declines to compel the Government to produce such documents in the absence of any showing of materiality.

## CONCLUSION

For the foregoing reasons, Seabrook's motion to compel is denied in its entirety.

The Clerk of Court shall terminate the open motion (ECF Nos. 373, 378).

SO ORDERED.

Dated: July 1, 2021  
New York, New York

/s/  
ALVIN K. HELLERSTEIN  
United States District Judge

9