UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
UNITED STATES OF AMERICA,                   :
                                             :  **ORDER DENYING HABEAS**
v.                                           :  **PETITION IN PART AND**
                                             :  **ORDERING ADDITIONAL**
NORMAN SEABROOK,                             :  **BRIEFING IN PART**
                                             :
                         Defendant.          :  16 Cr. 467 (AKH)
                                             :  21 Civ. 8767 (AKH)
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

On August 15, 2018, a unanimous jury convicted Petitioner Norman Seabrook of one count of honest services wire fraud in violation of 18 U.S.C. § 1349 and one count of conspiracy in violation of 18 U.S.C. §§ 1343, 1346. On September 21, 2020 the Second Circuit affirmed Petitioner's conviction. Petitioner filed the instant petition pursuant to 28 U.S.C. § 2255 to vacate his convictions for conspiracy to commit honest services wire fraud and committing honest services wire fraud. Petitioner also moves for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, based on the purported discovery of new evidence. For the reasons that follow, the petition is denied in part, additional briefing is ordered in part, and the motion for a new trial is denied.

## BACKGROUND[1]

Seabrook's convictions for honest services wire fraud and conspiracy to commit honest services wire fraud stemmed from a bribery scheme during his tenure as the president of the Correction Officers Benevolent Association ("COBA"), the nation's largest correction

---

[1] The Court assumes familiarity with the factual background of this case and the evidence adduced at trial, which my previous rulings and the Court of Appeals have addressed extensively. The following discusses only the facts necessary to resolve the pending motion.

officers' union. Pursuant to the bribery scheme, Seabrook invested $20 million of COBA funds, substantially all COBA's pension fund including reserves, into the hedge fund Platinum Partners in three tranches over the course of 2014. Seabrook did so in exchange for a promise of a share of the yearly revenue that the fund would charge for the investment, to be paid personally to him. Seabrook was promised approximately $100,000 the first year of investments, and equivalent sums to follow. However, he was paid $60,000 in cash in December 2014, stashed inside a Ferragamo men's handbag. Jona Rechnitz arranged the bribe of Seabrook on behalf of Platinum and advanced the $60,000 bribe payment, which was paid by Murray Huberfeld, one of the principals of Platinum Partners. When Platinum Partners failed, COBA lost $19 million of the $20 million invested. Federal law enforcement agents arrested Seabrook on June 8, 2016 and executed a search warrant that authorized the seizure of any cash in an amount greater than $5,000 and any Ferragamo shoes or bags. Among other things, Federal law enforcement agents recovered a Ferragamo handbag and $21,000 in cash found within three bank envelopes with handwritten markings of "5M," "10M," and "10M."

Seabrook first was tried with Murray Huberfeld as co-defendant and Judge Andrew L. Carter as trial judge. It concluded with a hung jury, and on November 16, 2017, a mistrial was ordered. Two issues from that trial are relevant to the motion before me. *In limine,* before the first trial, Judge Carter ruled that evidence of the extent of COBA's loss would be inadmissible because loss was not an element of the crime of honest services wire fraud. Jona Rechnitz, a cooperating witness, was cross-examined at length on numerous instances of bribery, lying, acts of fraud and, in addition, on a prior use of blackface.

I was assigned to preside over the re-trial. During pre-trial, Huberfeld pled guilty, not to defrauding COBA, but to defrauding his own his company, Platinum Partners. I accepted his plea, commenting that I regarded Platinum Partners as a beneficiary of Huberfeld's crime,

that COBA was the real victim, and that I likely would sentence accordingly. *See* ECF No. 203. This left Seabrook as the only defendant.

*In limine* before the re-trial of Seabrook, the Government sought reconsideration of Judge Carter's previous ruling excluding evidence of the extent of COBA's loss. I ruled that such evidence was admissible. The defense was intent on offering evidence of the reasonableness and suitability of the investment, but this evidence, I believed, was not relevant to a case alleging that the investment was procured by bribery. I ruled that if defendant planned to present such evidence, the outcome of the investment also could be offered to present the entire context of the investment. *See* ECF No. 219.

Before trial, the Government advised that one of its witnesses would be a former officer of Platinum Partners, Gilad Kalter. Kalter had been a summer intern for me years before, when he was in law school, and his mother and my wife had been friends and co-officers of a charity. I commented that these facts would not affect my rulings and, in my opinion, did not raise an appearance of conflict. Nevertheless, I asked the parties to consider the matter, and for the Government to write to state if either party objected (without revealing which party that was). The Government's letter of July 16, 2018 represented that neither party objected or sought recusal. *See* ECF No. 218.

One of the Government's major witnesses was Jona Rechnitz, a cooperating witness who had testified in the first trial that he had arranged and helped to accomplish Huberfeld's bribe of Seabrook. Seabrook's counsel extensively cross-examined Rechnitz on his involvement in other bribes of City officials, and brought out other facts affecting his credibility. In the first trial, defense counsel had elicited that Rechnitz once had appeared in blackface, but did not cross examine him on his use of black face in the second trial.

At the conclusion of the retrial, on August 15, 2018, the jury delivered its verdict, finding Seabrook guilty of both counts. I sentenced Seabrook on February 8, 2019 to a

Guidelines sentence of 58 months' imprisonment,[2] three years of supervised release, and restitution to COBA in the amount of its $19 million loss, at a rate of 10% of Seabrook's monthly net income. *See* ECF Nos. 298, 302. Seabrook also moved for a new trial, a motion I denied on June 15, 2020.

I sentenced Huberfeld on February 12, 2019, and gave him 30 months imprisonment, three years of supervised release and immediate restitution of COBA's loss.[3] I explained my sentence as reflecting the culpable equivalence of the bribe giver and the bribe taker, and Huberfeld's considerable assets. Thirty months reflected adjustments under the Guidelines that added to Seabrook's sentence and diminished Huberfeld's sentence because Huberfeld had not committed a breach of trust and had accepted responsibility. *See* Huberfeld Sentencing Tr., ECF No. 300, at 42:15–43:6; 59:10–21.

I sentenced Rechnitz on December 19, 2019. Rechnitz, the Government represented, had given considerable and useful cooperation in a number of cases, and the Government asked me to consider that extensive cooperation in determining his sentence. I gave Rechnitz 5 months' imprisonment and 3 years' supervised release, the first 5 months of which would be served under house arrest. *See* 16 Cr. 389, ECF Nos. 80, 84. I ordered $19 million restitution to COBA but, recognizing Rechnitz' assistance and financial pleas, ordered that his contribution was to be capped at $10 million, and that he should make payments at the rate of $500,000 per year. Rechnitz Sentencing Tr., 16 Cr. 389 ECF No. 80, at 87:9–11.

Seabrook appealed from the judgment against him, and from the denial of his motion for a new trial. The Second Circuit affirmed Seabrook's judgment and sentence on September 9, 2020. ECF No. 334. Huberfeld appealed separately, as did Rechnitz.

---

[2] The Guidelines showed a net offense level of 24, with no criminal history points equating to 51 to 63 months' custody.
[3] Huberfeld and COBA had made a private agreement providing payment by Huberfeld over time of $7 million, and satisfaction by COBA of its claim against Rechnitz. *See* Huberfeld Sentencing Tr., ECF No. 300, at 6:17–7:6.

4

As to Huberfeld, the Second Circuit reversed my order as to restitution, holding that the Government's choice of the crime to which Huberfeld had pleaded guilty—a fraud of $60,000 against Platinum Partners to cover the bribe to Seabrook, and not a $19 million fraud against COBA—absolved Huberfeld from a restitution obligation to COBA. *See United States v. Seabrook*, 968 F.3d 224 (2d Cir. 2020). Huberfeld was subsequently resentenced by Judge Lewis J. Liman to seven months' imprisonment and ordered to pay restitution of $60,000. *See* ECF Nos. 402, 420.

Rechnitz' appeal was delayed by COBA's motion for full restitution under the Crime Victim Rights Act ("CVRA"). In ruling on that motion, I reevaluated Rechnitz' culpability and financial conditions and held Rechnitz liable to COBA for the balance of the restitution owed, amounting to $12 million. *See* 16 Cr. 389, ECF No. 156. His appeal is now pending.

Meanwhile, with COVID raging, I allowed Seabrook to postpone his reporting date to the Bureau of Prisons. Represented by a third attorney, Seabrook filed several motions to obtain evidence of bribery efforts by Rechnitz of New York City officials claimed to be in the Government's files. I denied the motions on July 1, 2021 as repetitive of the considerable evidence at trial, and denied reconsideration twice thereafter, on August 27, 2021 and November 22, 2021. Petitioner is now in custody and filed the instant motion under 28 U.S.C. § 2255 on October 26, 2021.

## DISCUSSION

In his Section 2255 petition, Petitioner identifies two grounds for relief: (1) ineffective assistance of counsel, and (2) failure of the Government to disclose material evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). He argues also, notwithstanding the denial of his appeal, that (3) evidence of COBA's loss was improperly admitted, and (4) he received a disproportionately harsh sentence

in violation of his right to due process, and argues that he should be given a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

To obtain collateral relief under Section 2255, a defendant must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000). This is a "significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Where a motion for collateral relief under Section 2255 and the files and records of the case show conclusively that the prisoner is entitled to no relief, the court need not grant an evidentiary hearing to determine the issues and to make findings of fact and conclusions of law. 28 U.S.C. § 2255(b); *see also Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). Where appropriate, a court can refer to affidavits to "expand the record without conducting a full-blown testimonial hearing." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). Such a "middle road" can avoid "delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims." *Id.* at 86.

## I. Ineffective Assistance

Petitioner argues that he suffered a violation of the Sixth Amendment's guarantee of right to counsel. To prevail on an ineffective assistance of counsel claim, a defendant has the burden of: (i) showing that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms[,]" thereby overcoming the "strong presumption" that his counsel's conduct was reasonable and (ii) "affirmatively prov[ing] prejudice,"—that is, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94 (1984); *accord United States v. De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001).

Under the first prong of the *Strickland* analysis, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990). A defendant's subjective belief that his trial counsel's strategic choices were inadequate is insufficient. *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986).

To satisfy the second prong, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. A defendant cannot establish prejudice by merely showing that counsel's errors had "some conceivable effect" on the result; the question is whether the errors undermines the reliability of the proceeding. *See id.* at 693. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011).

### A. Failure to Object to Alleged Conflict of Interest

Petitioner argues that his counsel should have objected, and insisted on my recusal, because of prior relations with Gilad Kalter, a Government witness. Petitioner argues that his trial counsel failed to consult Petitioner. Since Petitioner was in the courtroom and seated next to counsel, Petitioner's argument is frivolous. In any event, neither prong of *Strickland* is satisfied by Petitioner's argument. Counsel was not required to consult with Petitioner as to each tactical decision that he made. *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (citing *Taylor v. Illinois*, 484 U.S. 400, 417–418 (1988)).

The facts about Kalter are these. On July 16, 2018, the Government submitted a letter describing previous encounters Gilad Kalter and the mother-in-law and father-in-law of

7

Murray Huberfeld.[4] *See* ECF No. 218. The letter was submitted so that I could "examine [the relevant facts] in light of the factors outlined in Title 28, Section 455 of the United States Code, which governs judicial recusal" and noted that "neither the Government nor counsel for Mr. Seabrook believes that the above facts require the Court's recusal under the statute." *See id.* at 1, 3. I shared that assessment, and declined to recuse myself from the case.

In this context, Petitioner fails to explain how trial counsel's assessment that no conflict existed under 28 U.S.C. § 455 "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Even if, after consulting with Seabrook, trial counsel had objected to the potential conflict, there is no showing that any alleged conflict resulted in prejudice. Petitioner provides no reasoning that might have led me to conclude a conflict existed, and Petitioner does not identify anything in the record that indicates he was adversely affected by a finding that no conflict existed. Additionally, at trial, I said to Kalter before he was sworn and outside the presence of the jury, "I know you. I know your parents. My wife worked with your mother, and you were an intern. None of this will affect how I look upon you in this case." Second Trial Tr. at 256:20–22. Petitioner was present for that statement, sitting next to his counsel. Petitioner did not object.

### B. Cross Examination of Gilad Kalter

There is no basis to conclude that Trial counsel's cross-examination of Gilad Kalter constituted ineffective assistance under *Strickland*. In his affirmation, Petitioner's counsel notes only that "Following some 51 pages of direct examination, defense counsel's cross-examination encompassed only 23 pages." Adler Decl. at ¶ 40. Decisions such as the length and manner of cross examination fall squarely within the "wide range of reasonable professional assistance" and do not give rise to viable claim of ineffective assistance. *Aguirre*, 912 F.2d at

---

[4] In his submission, Petitioner identifies the witnesses as Gilad Kalter and Andrew Kaplan, ECF No. 424-1, while the Government's 2018 letter identified them as Kalter and Huberfeld. ECF No. 218.

8

560. Petitioner argues that "[trial counsel], having elicited from Kalter the 'rosy financial prospects,'" also should have shown Platinum Partners' actual financial situation, how it misled investors, and its subsequent filing for bankruptcy protection. Seabrook Decl. at ¶ 90. Trial counsel's decision not to pursue the additional lines of questioning was a strategic decision, and does not constitute ineffective assistance. *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (citing *Strickland*, 466 U.S. at 689). Petitioner's strategy was to show that he had made a suitable investment, and the additional line of questioning Petitioner now raises could have impeached his own strategy.

### C. Direct & Cross Examination of Jona Rechnitz

Trial counsel's decision not to extend his cross examination of Jona Rechnitz to ask questions about prior use of blackface is similarly not a reasonable basis for finding ineffective assistance. Petitioner asserts that it was error for trial counsel to refrain from questioning Rechnitz about this conduct after trial counsel had done so at Seabrook's first trial. Seabrook Decl. at ¶¶ 59–61. What this additional item of cross-examination could have achieved is not mentioned. Rechnitz' credibility was extensively and effectively impeached, and any additional item of impeachment would not have added additional weight and might even have diminished an already effective cross-examination. *See, e.g.*, Second Trial Tr. at. 555:4–5 (lying to law enforcement officers); *id.* at 575:19–22, 579:1–12, 601:13–605:16 (bribing police officers and politicians); *id.* at 609:12-16 (violating election laws). *See, also, United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998) ("[W]here ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial."); *United States v. Wong*, 78 F.3d 73, 80 (2d Cir. 1996). The same is true for cross examination of Rechnitz on other bases, including cross examination on the subject of the scope of Platinum Partners' efforts to conceal fraud and mislead potential investors. *See id.*

9

Petitioner also argues that it was error for trial counsel not to object when the Government introduced Rechnitz' cooperation agreement into evidence. Adler Decl. at ¶¶ 106–11. Petitioner cannot establish any prejudice that stems from the introduction of the agreement on direct examination, as opposed to cross examination or re-direct. Relying on *United States v. Arroyo-Argulo*, 580 F. 2d 1137 (2d Cir 1979), Petitioner argues that introduction of a cooperation agreement by the Government on direct examination constitutes improper bolstering. However, as *Arroyo-Argulo* held, "[i[n view of the inevitability of defense counsels' attack on Rivas' credibility and the formidable assault which in fact was made in the defense openings, cross-examinations and summations, the error in the timing of the introduction of the cooperation agreement does not require reversal." *Id.* at 1147. Such is the case here. In light of Petitioner's extensive and effective impeachment of Rechnitz' credibility, the timing of the introduction of Rechnitz' cooperation agreement is not grounds for an ineffective assistance claim. The trial court has discretion to allow the Government to anticipate a defense, and it is doubtful that I would have sustained an objection if one had been made.

### D. Admission and Treatment of Evidence Seized from Petitioner's Home

Petitioner argues that trial counsel erred in two respects concerning evidence—including $21,000 found in a safe—from Petitioner's home. First, trial counsel should have moved *in limine* to exclude the evidence because several months had transpired between the bribe and the search; and, second, trial counsel should have interviewed or otherwise elicited testimony from witnesses who could have provided an explanation as to the funds' origin. Seabrook Decl. at ¶ 69; Adler Decl. at ¶¶ 51–52.

Clearly, the evidence was admissible and defense council effectively crossed the evidence and argued against it in summation. In any event, there is no basis for a claim of ineffective assistance. The time between the alleged bribe and the occurrence of the search goes to the weight, not the admissibility, of any evidence, and is well within the trial judge's

10

discretion to admit or reject. *See* Fed. R. Evid. 401, 403. The issue was covered in summation, and defense counsel argued persuasively (although not successfully in light of the verdict) that the Government's position—that the seized cash was the same money Seabrook had received as a bribe 19 months earlier, and not the property of his wife—was a false argument. *See* Second Trial Tr. at 1184:25–1186:18. That the jury chose to credit the Government's version of events rather than Seabrook's is not a basis of an ineffective assistance claim.

Similarly, Petitioner's argument that trial counsel should have sought testimony to explain the origins of the funds fares no better. As to calling Seabrook's wife, daughter, and bank representatives to the witness stand, these were strategic decisions that could well have gone against Petitioner. Petitioner cannot demonstrate any prejudice. Seabrook's bank records were admitted in evidence, and trial counsel reviewed them for the jury during summation. Trial counsel advanced the arguments Petitioner presses now—that the money was withdrawn from legitimate bank accounts by Seabrook's wife. There is little reason to believe that cumulative testimony on this point from Seabrook's wife and daughter would have done anything to change the jury's mind.

In a section of his brief labeled "The Government's Summation," Petitioner contends that there was no credible proof connecting the funds seized at the Seabrook home, and the Ferragamo bag found therein and counsel should have objected during the Government's summation. Adler Decl. at ¶ 60. Petitioner presents no basis to conclude that there was anything improper about the Government's summation. Likewise, assessing the credibility of evidence pertaining to the Ferragamo bag and the seized funds is properly the province of the jury. That both the Government and Petitioner's trial counsel addressed the Ferragamo bag and the seized funds in summation provides no basis for a finding Petitioner is entitled to habeas relief. Accordingly, Petitioner fails to satisfy the requirements of *Strickland* with respect to trial counsel's conduct concerning the evidence seized from Seabrook's home.

11

### E. Failure to Object to Testimony Concerning Bribes of Rob Astorino

Petitioner asserts that trial counsel should have objected to the admission of Rechnitz' testimony that he had bribed Westchester Counter Executive Rob Astorino,[5] or at least requested a sidebar to inquire about any interview of Astorino that may have taken place. *See* Seabrook Decl. at ¶ 100; Adler Decl. at ¶¶ 55–57. The argument is without merit. First, trial counsel's decision not to object to testimony that Rechnitz bribed Astorino was not "below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687, given that the testimony was admissible under the Federal Rules of Evidence. *See* F.R.E. 401, 403. The Government can elicit evidence that the defense is likely to bring out in the hope of lessening the impact of such evidence, and the evidence clearly is relevant, both to Rechnitz' mode of operations and to his credibility. *See United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("[a] trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment."); *United States v. Shin*, 2022 WL 153184, at *4 (S.D.N.Y. Jan. 15, 2022). Thus, Petitioner cannot satisfy either prong of *Strickland* with respect to the testimony concerning Astorino.

### F. Failure to Move for all *Brady/Giglio* Material

Petitioner asserts that trial counsel failed to move for *Brady* and *Giglio* material. *See* Seabrook Decl. at ¶ 79; Adler Decl. at ¶ 3. The assertion is false, and the record shows that counsel did request such materials. For instance, at a conference on August 10, 2017, when discussing *Brady* and *Giglio* material, Mr. Schectman made the following request: "What I ask the Court simply is to say to the government, turn that material [referring to *Brady*/Giglio material] over a month ahead of time so that the defense can have it and prepare and be in a position to do what this entire case is about, which is cross-examining Jona Rechnitz." Conf.

---

[5] Astorino was not a witness and did not testify at trial.

12

Tr., ECF No. 81, at 19:1–4. At the same conference, counsel expressed the same concerns Petitioner raises now. *See id.* at 23:11–24:21. Counsel for the Government also confirmed that defense counsel requested *Brady/Giglio* material. *Id.* at 27:6–17. The parties also discussed disclosure of material from parallel proceedings at the conference on January 6, 2017. *See* Conf. Tr., ECF No. 49, at 2:14–7:14. Petitioner cannot base his ineffective assistance claim on these grounds.

### G. Failure to Object to the Court's Questioning

Petitioner argues that trial counsel was ineffective in not objecting to my questioning of witnesses. This claim, however, was previously raised and resolved on Petitioner's direct appeal. On appeal, the Second Circuit declined to find that my level of questioning constituted error, and found that I "explicitly instructed the jury, both during the course of the trial and in [my] final instructions, that [I] had no view with respect to the credibility of witnesses or the proper resolution of the trial, and that such determinations were the sole province of the jury." *Seabrook,* 814 Fed.Appx. at 663. Petitioner's claim is thus barred by the "mandate rule," which "bars relitigation of issues already decided on direct appeal." *Yick Man Mui v. United States,* 614 F.3d 50, 53 (2d Cir.2010) (citations omitted); *United States v. Pitcher,* 559 F.3d 120, 124 (2d Cir.2009). To the extent Petitioner attempts to characterize this claim as an ineffective assistance for failing to object during trial, that too is barred, because the factual predicate was rejected on Petitioner's direct appeal. *See Mui v. United States,* 614 F.3d 50, 53 (2d Cir. 2010) (citing *Pitcher,* 559 F.3d at 124).

### H. Failure to Move to Dismiss Count I under Rule 29

Petitioner contends that trial counsel was ineffective for failing to move to dismiss Count I under Rule 29 of the Federal Rules of Criminal Procedure on the basis that Petitioner and his co-conspirators allegedly had no "meeting of the minds," which was a required element of Count I. Adler Decl. at ¶ 112. This, too, is an argument that could have been made on appeal.

13

Furthermore, given the weight of the evidence presented at trial, I find that any failure to move pursuant to Rule 29 did not fall below the "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Government's evidence included the testimony of one of Petitioner's co-conspirators, as well as physical evidence seized from Petitioner. In such circumstances, no argument in support of a motion for a judgment of acquittal could have overcome the Government's proof, and failure to move was not error. *See Awulye v. United States*, 2020 WL 774093, at *4 (S.D.N.Y. Feb. 18, 2020) (counsel's failure to bring Rule 29 motion did not amount to ineffective assistance of counsel where Government's evidence was strong); *United States v. Fiumano*, 2022 WL 294119, at *6 (S.D.N.Y. Feb. 1, 2022).

## I. Ineffective Assistance at Sentencing[6]

Petitioner argues trial counsel rendered ineffective assistance at sentencing, primarily based on the fact that Petitioner received a greater sentence than his coconspirators. *See* Adler Decl. at ¶¶ 61–79. The record contradicts the argument that counsel was ineffetive. *See generally*, Seabrook Sentencing Tr., ECF No. 302. In advance of sentencing, counsel submitted a detailed memorandum that emphasized Petitioner's commitment to service and laudable past accomplishments. At sentencing, counsel discussed Petitioner's life story, argued that Petitioner never intended for COBA to lose any money, and further argued that Petitioner himself was taken in by Platinum Partners' fraudulent representations as to its suitability as an investment. *See* Sent. Tr. at 12:14–15:22. Petitioner's arguments are without merit.

Moreover, Petitioner identifies only one specific argument that counsel should have made differently: that a restitution obligation of $19 million to COBA was inappropriate under *United States v. Calderon*, 944 F.3d 72 (2d Cir. 2019) because Seabrook did not proximately cause COBA's loss. That argument is unpersuasive for several reasons. First,

---

[6] I address separately, in Section V, *infra*, whether Petitioner's sentence itself ran afoul of any due process protections.

14

*Calderon* was not decided until December 3, 2019, while Petitioner's sentencing took place ten months earlier, on February 8, 2019. Second, counsel *did* advance an argument that Petitioner was not the proximate cause of COBA's loss when he argued that the loss was unforeseeable. Sent. Tr. at 48:17–22, 49:2–51:24.

Third, as I have found previously, *Calderon* is inapplicable to the facts of this case. *See United States v. Rechnitz*, 2021 WL 5232395, at *6–7 (S.D.N.Y. Nov. 9, 2021). As I found in *Rechnitz*,

> "The key question *Calderon* posed, consistent with this Circuit's prior rulings on the MVRA, was to what *kind* of loss the offense conduct exposed the victims. . . . Platinum Partners' collapse was a financial collapse, a risk that is inherent in all investments, particularly an investment in a hedge fund. Seabrook caused COBA to invest in Platinum Partners, not because it was the best investment COBA should make, but because he accepted a bribe to make that investment. . . . COBA's financial loss was caused by a corrupted financial decision, a decision made not because of a rational and deliberate investment evaluation, but because of the dilution of prudence induced by a bribe."

*Id.* To the extent it is relevant to Seabrook's claims here, I reach the same conclusion. Accordingly, Petitioner can demonstrate neither that counsel was ineffective at sentencing, nor that counsel's conduct resulted in any prejudice.

### J. Distraction of Trial Counsel

Finally, Petitioner asserts, in broad terms, that Schectman was "distracted" by his involvement with another case. Seabrook Decl. at ¶ 62. Neither Petitioner nor his counsel make any showing that Schectman was distracted, or that he failed in any way in conducting a strong defense. There nothing to indicate that Schectman's conduct resulted in any prejudice to Petitioner's defense at trial.

### K. No Evidentiary Hearing is Required

In general, Section 2255 requires that I hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28

15

U.S.C. § 2255(b); *see Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). In the Second Circuit, the district court may also choose "a 'middle road' of deciding disputed facts on the basis of written submissions." *Id.* (quoting *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003)). In this case, Petitioner's ineffective assistance claims are contradicted by the trial record and transcripts of the various proceedings in this case. As such, I find that no evidentiary hearing is warranted on the question of ineffective assistance. *See Wang v. United States*, 458 F. App'x 44, 46 (2d Cir. 2012).

## II. *Giglio* Violation

Petitioner argues that the Government has withheld material evidence in violate of *Brady* and *Giglio*. Adler Decl. at ¶¶ 125–31. The materials allegedly withheld seem to be those that Petitioner previously sought in five post-judgment petitions. *Id.* at ¶ 126; *see also* ECF Nos. 373, 378, 380, 394, 398. I have already reviewed, analyzed, and rejected petitioner's claims with respect to the Government's purported *Brady* and *Giglio* obligations. *See* ECF Nos. 403, 418, 428. Petitioner provides no reason I should revisit my rulings denying his request for purported *Brady/Giglio* material, and I see no reason to change my previous finding that "the materials that Seabrook now seeks, even if they contain any undisclosed evidence, would be 'cumulative and hence immaterial' ... [a]ccordingly, Seabrook has not established that any of the documents of which he demands production is 'material' within the meaning of *Brady*, *Giglio*, and related authorities." Ord. Denying Mot. to Compel, ECF No. 403, at 8 (citations omitted). Insofar as Petitioner takes issue with my previous rulings, he should proceed via direct appeal, not the instant habeas petition.

## III. Improper Admission of Evidence of COBA's Loss

Petitioner appears to argue that evidence of COBA's loss was improperly admitted at trial. *See* Seabrook Decl. at ¶ 56. However, on Petitioner's direct appeal, the Second Circuit previously rejected such a claim, finding that admitting evidence of the full extent of

COBA's loss was not error. *United States v. Seabrook*, 814 Fed.Appx. 661, 662 (2d Cir. 2020). The court also noted that "[the district court] took appropriate steps to limit the potential for unfair prejudice by cabining the presentation of such evidence, and it acted well within its bounds of discretion in permitting its admission." Petitioner's claim is thus barred by the "mandate rule," as discussed *supra*. *See Mui*, 614 F.3d at 53 (citations omitted); *Pitcher*, 559 F.3d at 124. In any case, Petitioner provides no rationale for me to revisit my trial rulings, or to disturb the findings on direct review.

### IV.  Motion for New Trial

Petitioner's argument that he is entitled to a new trial pursuant to Rule 33 falls well short of the mark. Federal Rule of Criminal Procedure 33 provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial "based on newly discovered evidence is 'not favored,'" and accordingly a court "'must exercise great caution'" and may grant the motion "'only in the most extraordinary circumstances.'" *United States v. Diaz*, 176 F.3d 52, 106 (2d Cir. 1999) (quoting *United States v. Spencer*, 4 F.3d 115, 118 (2d Cir. 1993)).

Petitioner argues that a civil lawsuit filed in 2020, alleging that outside accounting firms enabled Platinum Partners to conceal its fraud, constitutes new evidence such that a new trial is warranted. The filing of the lawsuit is far from the "extraordinary circumstances" that would warrant a new trial. Neither Petitioner nor his counsel identify specific items of evidence that would have made a difference. Petitioner's counsel argued that Platinum's failure was unexpected, and the new lawsuit adds nothing that would have been useful.

More important, the question of whether outside auditing firms contributed to Platinum Partners' fraud is irrelevant to whether Seabrook committed honest services wire fraud. As the Second Circuit already discussed in Petitioner's direct appeal, in an honest services wire fraud case what matters is the defendant's "intent to deprive another of the intangible right of

17

honest services." *Seabrook*, 814 Fed.Appx. at 662 (quoting *United States v. Rybicki*, 354 F.3d 124, 145 (2d Cir. 2003)). Regardless of whether outside auditors masked the level of fraud at Platinum Partners, Seabrook acted with corrupt intent to steer COBA's money to Platinum Partners in exchange for a bribe. In doing so, Seabrook caused COBA to invest in Platinum Partners not because it was the best investment COBA should make, but because he accepted a bribe to make that investment. The motion for a new trial is thus denied.

## V.    Disproportionate Sentence and Potential Trial Penalty

Petitioner argues that he received a sentence disproportionately harsher than the sentences his co-conspirators received. *See* Adler Decl. at ¶¶ 80–83, 115–121; Seabrook Decl. at ¶ 55. Petitioner likewise suggests that he suffered a penalty for exercising his right to a trial, in violation of his right to due process. As a remedy, Petitioner seeks resentencing. Adler Decl. at ¶ 124.

Unlike Petitioner's other claims, the grounds of disproportional sentences may possess merit. I sentenced Seabrook to 58 months' custody. I considered Seabrook's sentence anticipating a serious sentence that I thought would be appropriate for Huberfeld. I sentenced Huberfeld to 30 months custody and immediate, full restitution of $19 million from his considerable assets, for I considered that the bribe-giver was no less culpable than the bribe-taker.[7] I had accepted Huberfeld's plea with a warning that I would consider that his fraud caused foreseeable damage to COBA in the full amount of its loss, and that Platinum Partners was the beneficiary of Huberfeld's crime, not the victim.[8]

---

[7] The Government explained the equivalence; the difference in custodial sentencing under the Guidelines was due to adjustments: Seabrook's breach of trust (two points) and Huberfeld's acceptance of responsibility (three points), netting a five-point difference and changing the Guidelines' custodial range from 51–63 months to 30–37 months. *See* Huberfeld Sentencing Tr., ECF No. 300, at 42:15–43:23.
[8] The Huberfeld Sentencing transcript describes my reasoning. *See generally* ECF No. 300.

My expectations were wrong. The Court of Appeals reversed my sentence of Huberfeld, ruling that Huberfeld had no restitution obligation to COBA, and that the custodial sentence should be based, not on a crime on COBA, but on a crime on Platinum Partners with effects on COBA.[9] Judge Liman then re-sentenced Huberfeld to seven months custody, varying a month upwards from the Guidelines covering his plea to defrauding Platinum Partners by not disclosing his bribe of Seabrook.[10]

The result is a significant disparity of sentences, an appearance of arbitrariness, and potential disrespect of the community because of the appearance of racial differentiation. I ask for the briefs of counsel as to my power to re-sentence in order to reduce or eliminate the disparity; the Government's brief is due by March 30, 2022, and Petitioner's brief is due by April 13, 2022.

## CONCLUSION

For the foregoing reasons, I deny Petitioner's petition with respect to all bases of relief, except the issue of the disproportionate sentence. I reserve judgment as to that issue. Petitioner's motion for a new trial also is denied.

I decline to issue a Certificate of Appealability as to the arguments on which I ruled, for Petitioner has "not made a substantial showing of the denial of a constitutional right" as to these issues. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

SO ORDERED.

Dated: March 9, 2022
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

---

[9] COBA and Huberfeld made an agreement, before sentencing, by which Huberfeld agreed to pay COBA $7 million, and COBA agreed to accept such payment in full satisfaction of its claim. I had held that Huberfeld was nonetheless jointly and severally liable to pay full restitution; the agreement with COBA could be only a credit against such restitution. *Id.* at 63:5–13.

[10] Sentence of Hon. Lewis J. Liman, June 22, 2021, ECF Nos. 402, 420.