UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA,                                     :
                                                              :     **ORDER DENYING PETITION**
         v.                                                   :     **UNDER 28 U.S.C. 2255 BUT**
                                                              :     **SUGGESTING PROCEEDINGS**
NORMAN SEABROOK,                                              :     **FOR COMPASSIONATE**
                                                              :     **SENTENCING REDUCTION**
                                Defendant.                    :
                                                              :     16 Cr. 467 (AKH)
                                                              :     21 Civ. 8767 (AKH)
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        In a second try after a split jury, Petitioner Norman Seabrook was convicted of

one count of honest services wire fraud (18 U.S.C. § 1349) and one count of conspiracy to

commit such crime (18 U.S.C. §§ 1343, 1346).  I sentenced Seabrook to 58 months custody and

$19 million restitution, payable at 10% of his net income.  The Second Circuit affirmed.  *See*

*United States v. Seabrook¸* 814 Fed.Appx. 661, 662 (2d Cir. 2020).  Petitioner then petitioned to

vacate his convictions.  I denied the petition, except for one ground about which, after further

briefing, I now write.  Order Denying Habeas Petition in Part, ECF No. 436.  For the reasons that

follow, the balance of Seabrook's habeas petition is denied.

### BACKGROUND[1]

        Seabrook, the former President of the Correction Officers Benevolent Association

("COBA"), was found by a jury to have accepted a bribe in 2014 to cause COBA to invest $20

million of pension funds, substantially the entirety of the pension fund, in a hedge fund, Platinum

Partners LP.  The bribe promised him compensation, estimated to be $100,000 the year of the

---

[1] I assume familiarity with the factual background of this case and the evidence adduced at trial, which
my previous rulings, including my order dated March 9, 2022, and the Court of Appeals have addressed
extensively. The following discusses only the facts necessary to resolve the pending motion.

investment and equivalent sums to follow, based on income the fund expected to receive from the investment. Murray Huberfeld, a principal of Platinum Partners, promised to pay the bribe. Jona Rechnitz, a friend of politicians and of both Huberfeld and Seabrook, arranged the bribe. The bribe, however, was not paid in full. Claiming disappointing 2014 results, Huberfeld paid $60,000 through a cash advance facilitated by Rechnitz. Huberfeld then had Platinum Partners repay Rechnitz, disguised on Platinum's books as a repayment for the procurement of court-side tickets for the New York Knicks. COBA ultimately lost $19 million of its $20 million investment.

Seabrook and Huberfeld were tried together, but the jury could not agree on a verdict. After re-assignment to me and before re-trial, the government extended a favorable plea deal to Huberfeld, allowing him to plead guilty, not to defrauding COBA of $19 million, but of defrauding his own company, Platinum Partners, of $60,000—the amount listed on Platinum's books as a payment for Knicks tickets. I accepted the plea after an extended allocation, during which Huberfeld admitted that the purpose of the fraud was to bribe Seabrook to gain a $20 million investment from COBA. ECF No. 203, Huberfeld Plea Tr., at 27:21–28:7. I commented that COBA, not Platinum Partners, was the real intended victim, and advised Huberfeld, before accepting his plea, that his sentence might reflect the reality and consequence of his bribe. *See id.* at 9:15–10:22.

This left Seabrook as the only defendant in the second trial. Jona Rechnitz, the government's main witness, testified again pursuant to a cooperation agreement, and this time, without Huberfeld, the jury accepted his testimony. I sentenced Seabrook on February 8, 2019 to a Guidelines sentence of 58 months' imprisonment,[2] three years supervised release, and

---

[2] The Guidelines showed a net offense level of 24, with no criminal history points, equating to 51 to 63 months' custody.

restitution to COBA of $19 million, at a rate of 10% of net income.[3]  *See* ECF Nos. 298, 302.

Seabrook has been in custody since March 30, 2021.  I explained my sentence as reflecting an

approximate equivalence between the bribe giver, Huberfeld, and the bribe taker, Seabrook,

before Guidelines adjustment of five levels — three for Huberfeld's acceptance of responsibility

by a timely plea, and two because of Seabrook's violation of his fiduciary duty to COBA.  On

February 12, 2019, I sentenced Huberfeld to 30 months to reflect that five-level differential,

changing the Guidelines range, from 51–63 months to 30–37 months.  *See* Huberfeld Sentencing

Tr., ECF No. 300, at 42:15–43:23; 59:10–21.[4]

      Huberfeld's successful appeal changed the calculus.  The Second Circuit held that

Huberfeld's plea determined who was the victim and the amount of the loss, not COBA and a

$19 million loss, but Platinum Partners and a $60,000 loss.  *See United States v. Seabrook*, 968

F.3d 224 (2d Cir. 2020).  In the re-sentencing ordered by the Court of Appeals, Huberfeld was

sentenced to 13 months custody and $60,000 restitution to Platinum Partners.[5]  *See* ECF Nos.

402, 420.

## DISCUSSION

      There are two issues.  The first, raised in Seabrook's briefs, is whether the

disproportionate sentencing differential between Seabrook and Huberfeld constitutes error

warranting section 2255 relief. The second, which the parties have not briefed, is whether the

differential is basis for Compassionate Relief under 18 U.S.C. § 3582(c)(1)(a).

---

[3] Huberfeld, through a private agreement made before he was sentenced, paid COBA $7 million of its loss, in exchange for COBA's release of further claims against him. *See* Huberfeld Sentencing Tr., ECF No. 300, at 6:17--7:6.  Thus, $12 million remained as COBA's loss.

[4] I sentenced Rechnitz, because of extensive cooperation with regard to a number of defendants, to a much lower sentence.

[5] I recused myself from the re-sentencing proceedings.  The case was re-assigned to Hon. Lewis J. Liman for sentencing. *See* Sentence of Hon. Lewis J. Liman, June 22, 2021, ECF Nos. 402, 420.

I.    **The Difference in Sentences Does Not Entitle Seabrook to Habeas Relief**

In order to obtain collateral relief under Section 2255, a defendant must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000). This is a "significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). For a sentencing error to be cognizable on collateral review, it must be "of the fundamental character that renders the entire proceeding irregular and invalid." *United States v. Hoskins*, 905 F.3d 97, 103 (2d Cir. 2018) (quoting *United States v. Addonizio*, 442 U.S. 178, 186 (1979)). "A 'later development' that 'did not affect the lawfulness of the judgment itself—then or now,' is not enough to vacate the sentence imposed." *Id.* (quoting *Addonizio*, 442 U.S. at 186–88.

Petitioner argues that he received a sentence disproportionately harsher than the sentences his co-conspirators received and suggests that he suffered a penalty for exercising his right to a trial. The Government argues that this cannot be because Seabrook was sentenced before Huberfeld and Rechnitz. However, I sentenced Seabrook with Huberfeld's potential sentence in mind, and because of the Second Circuit's reversal and remand, followed by Huberfeld's re-sentence, Seabrook's sentence is disproportionate.

Of more importance, disproportionality in sentencing in the Second Circuit is measured nationwide, and not in relation to sentences of co-defendants. *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) ("section 3553(a)(6) requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants."); *United States v. Stevenson*, 834 F.3d 80 (2d Cir. 2016) (rejecting argument based on disproportionate sentences between co-defendants guilty of receiving and giving bribes constituting honest services fraud). Thus, "a defendant has no constitutional or

4

otherwise fundamental interest in whether a sentence reflects his or her relative culpability with respect to his or her codefendants." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995). And Seabrook cannot complain that his higher sentence after trial was a punishment for not pleading guilty. *See Stevenson*, 834 F.3d at 84.

Seabrook's petition for section 2255 relief is denied.

## II.   Compassionate Release

The sentences of Huberfeld and Seabrook, as they stand now, are unjustly disproportionate. However, traditionally, a district court cannot modify a sentence once announced. *See United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020); *United States v. Gotti*, 433 F.Supp.3d 613, 614 (S.D.N.Y. 2020). The First Step Act, providing for compassionate release from custody, or reductions of sentences, is an exception. It provides that

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> [1] extraordinary and compelling reasons warrant such a reduction; . . .
>
> [2] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A); *see also Concepcion v. United States*, 142 S.Ct. 2389, 2404 (2022) (holding that district courts have wide discretion to consider intervening changes of law or fact in reducing sentences under the First Step Act). However, there are pre-conditions: the defendant must first make his request to the warden of his facility and, if that request is not satisfied within 30 days, file a motion with the district court. *See* 18 U.S.C. § 3582(c)(1)(A).

My discussion of Seabrook's disproportionately high sentence would constitute adequate basis for a compassionate reduction of his sentence. But section 3582, and good sense, require the motion first to be made to the Bureau of Prisons, before a motion is filed with the district court. The procedure allows the Bureau of Prisons to consider the prison behavior of a defendant and to exercise discretion as to whether to support the prisoner's request. If a motion to the district court is necessary, the Government and the defendant both have the opportunity to express their respective positions. At this point, I am not able to grant compassionate relief under 19 U.S.C. § 3582(c).

## CONCLUSION

Seabrook's motion for release pursuant to 28 U.S.C. § 2255 is denied. Seabrook may consider initiating a procedure for compassionate release pursuant to 18 U.S.C. § 3582(c). But this order is now final, and an appeal, if desired, is now appropriate. I grant a Certificate of Appealability. Seabrook pleads a just basis for relief, and thus satisfies the requirement that he make a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). The Clerk shall terminate ECF No. 424 in 16 Cr. 467 and close 21 Civ. 8767.

SO ORDERED.

Dated:  August 10, 2022
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge