UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
UNITED STATES OF AMERICA,                                      :   **ORDER AND OPINION**
                                                               :   **GRANTING MOTION FOR**
        -against-                                              :   **REDUCTION OF SENTENCE**
                                                               :
NORMAN SEABROOK,                                               :   16 Cr. 467 (AKH)
                                                               :
                                Defendant.                     :
                                                               :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        In a second trial after a split jury, Petitioner Norman Seabrook was convicted of one count of honest services wire fraud (18 U.S.C. § 1349) and one count of conspiracy to commit such crime (18 U.S.C. §§ 1343, 1346). I sentenced Seabrook to 58 months custody and $19 million restitution, payable at 10% of his net income. The Second Circuit affirmed. *See United States v. Seabrook*, 814 Fed.Appx. 661, 662 (2d Cir. 2020). Petitioner then petitioned to vacate his convictions. I denied the petition. ECF Nos. 436, 450.

        Citing "extraordinary and compelling" circumstances because of, *inter alia*, a sentencing disparity between himself and his co-conspirators Murray Huberfeld and Jonah Rechnitz, Seabrook moves to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 248. The Government opposes, arguing that Seabrook has not demonstrated that "extraordinary and compelling" circumstances exist, and that the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in sentence. For the reasons discussed below, Seabrook's motion is granted.

## BACKGROUND[1]

Seabrook, the former President of the Correction Officers Benevolent Association ("COBA"), was found by a jury to have accepted a bribe in 2014 to cause COBA to invest $20 million of pension funds, substantially the entirety of the pension fund, in a hedge fund, Platinum Partners LP. The bribe promised him compensation, estimated to be $100,000 the year of the investment and equivalent sums to follow, based on income the fund expected to receive from the investment. Murray Huberfeld, a principal of Platinum Partners, promised to pay the bribe. Jona Rechnitz, a friend of politicians and of both Huberfeld and Seabrook, arranged the bribe. The bribe, however, was not paid in full. Claiming disappointing 2014 results, Huberfeld paid $60,000 through a cash advance facilitated by Rechnitz. Huberfeld then had Platinum Partners repay Rechnitz, disguised on Platinum's books as a repayment for the procurement of court-side tickets for the New York Knicks. COBA ultimately lost $19 million of its $20 million investment.

Seabrook and Huberfeld were tried together, but the jury could not agree on a verdict. After re-assignment to me and before re-trial, the government extended a favorable plea deal to Huberfeld, allowing him to plead guilty, not to defrauding COBA of $19 million, but of defrauding his own company, Platinum Partners, of $60,000—the amount listed on Platinum's books as a payment for Knicks tickets. I accepted the plea after an extended allocation, during which Huberfeld admitted that the purpose of the fraud was to bribe Seabrook to gain a $20 million investment from COBA. ECF No. 203, Huberfeld Plea Tr., at 27:21–28:7. I commented that COBA, not Platinum Partners, was the real intended victim, and advised

---

[1] I assume familiarity with the factual background of this case and the evidence adduced at trial, which my previous rulings, including my order dated March 9, 2022, and the Court of Appeals have addressed extensively. The following discusses only the facts necessary to resolve the pending motion.

2

Huberfeld, before accepting his plea, that his sentence might reflect the reality and consequence of his bribe. *See id.* at 9:15–10:22.

This left Seabrook as the only defendant in the second trial. Jona Rechnitz, the government's main witness, testified again pursuant to a cooperation agreement, and this time, without Huberfeld, the jury accepted his testimony. I sentenced Seabrook on February 8, 2019, to a Guidelines sentence of 58 months' imprisonment, three years supervised release, and restitution to COBA of $19 million, at a rate of 10% of net income.[2] *See* ECF Nos. 298, 302. I explained my sentence as reflecting an approximate equivalence between the bribe giver, Huberfeld, and the bribe taker, Seabrook, before Guidelines adjustment of five levels — three for Huberfeld's acceptance of responsibility by a timely plea, and two because of Seabrook's violation of his fiduciary duty to COBA. On February 12, 2019, I sentenced Huberfeld to 30 months to reflect that five-level differential, changing the Guidelines range, from 51–63 months to 30–37 months. *See* Huberfeld Sentencing Tr., ECF No. 300, at 42:15–43:23; 59:10–21.[3]

Huberfeld's successful appeal changed the calculus. The Second Circuit held that Huberfeld's plea determined who was the victim and the amount of the loss, not COBA and a $19 million loss, but Platinum Partners and a $60,000 loss. *See United States v. Seabrook*, 968 F.3d 224 (2d Cir. 2020). In the re-sentencing ordered by the Court of Appeals, Huberfeld was sentenced to 13 months custody and $60,000 restitution to Platinum Partners.[4] *See* ECF Nos. 402, 420. As a result, there is now an unjust disparity between Huberfeld and Seabrook's sentences, which, as explained below, justifies Seabrook's compassionate release.

---

[2] Huberfeld, through a private agreement made before he was sentenced, paid COBA $7 million of its loss, in exchange for COBA's release of further claims against him. *See* Huberfeld Sentencing Tr., ECF No. 300, at 6:17–7:6. Thus, $12 million remained as COBA's loss.

[3] I sentenced Rechnitz, because of extensive cooperation with regard to a number of defendants, to a much lower sentence.

[4] I recused myself from the re-sentencing proceedings. The case was re-assigned to Hon. Lewis J. Liman for sentencing. *See* Sentence of Hon. Lewis J. Liman, June 22, 2021, ECF Nos. 402, 420.

## DISCUSSION

### I. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F.Supp.3d 613, 614 (S.D.N.Y. 2020); *see also United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). Section 3582 of Title 18 of the U.S. Code provides one such exception by permitting a court to modify a term of imprisonment "upon motion of the defendant" if the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see also Concepcion v. United States*, 142 S.Ct. 2389, 2404 (2022) (holding that district courts have wide discretion to consider intervening changes of law or fact in reducing sentences under the First Step Act). In so doing, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" *United States v. Daugerdas*, --- F. Supp. 3d ---, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting *United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Brooker*, 976 F.3d at 236. "However, courts remain free—even after

4

*Brooker*—to look to § 1B1.13 for guidance in the exercise of their discretion." *United States v. Burman*, 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted); *see also Concepcion*, 142 S.Ct. at 2404.

The relevant policy statement provides that a reduction is permitted if "[e]xtraordinary and compelling reasons warrant the reduction" and "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. In assessing whether extraordinary and compelling circumstances are present, district courts may consider a broad range of factors to determine whether a defendant carries the applicable burden. *See United States v. Piggott*, 2022 WL 118632, at *2 (S.D.N.Y. Jan. 12, 2022). Most recently, the Supreme Court has emphasized the broad discretion district courts possess under the First Step Act. As the Supreme Court noted, "[b]y its terms" the First Step Act "does not prohibit district courts from considering any arguments in favor of, or against, sentence modification." *Concepcion*, 142 S.Ct. at 2403. "In exercising its discretion, the court is free to agree or disagree with any of the policy arguments raised before it." *Id.* at 2404. Moreover, I "need not find a single dispositive circumstance to determine that 'extraordinary and compelling reasons' exist;" instead "'the totality of the circumstances' justify such a finding." *Piggott*, 2022 WL 118632, at *2.

## II. A Sentence Reduction is Warranted for Seabrook

### A. Exhaustion of Administrative Remedies

Defendant has been incarcerated at the Beckley Satellite Camp since he self-surrendered in late May, 2021. Defendant moved for compassionate release with the Beckley Satellite Camp Warden. Defendant's petition was denied. As such, Seabrook has exhausted his administrative remedies, and his motion for compassionate release is ripe for consideration.

5

**B. Grounds for Compassionate Release**

Seabrook argues that the difficulty of obtaining health care while in custody, and the possibility of contracting COVID are "extenuating circumstances" that justify his release. *See* ECF No. 451-1 at *4. While these concerns are real, they do not, by themselves constitute extenuating circumstances. First, the prison system is well-equipped to give proper medical care to Seabrook for his documented conditions, including Asthma, as well as for the aftereffects of his prior bout with COVID-19. Second, concerns about COVID, in society generally, and in the federal prison system are much abated.

Seabrook also argues that that he did not "reasonably foresee that C.O.B.A. would suffer a loss of its invested funds," which he suggests negates the requirement that the Defendant be the proximate cause of the injury suffered. *See Id.* at *5. This argument fails as well. The issue of proximate cause has been fully litigated and adjudicated, and there are no grounds for me to revisit it here. *See e.g. United States v. Jacques,* No. 21-1277, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) ("claims regarding the validity of [a defendant's] conviction and sentence . . . [a]re not a proper basis for a § 3582(c)(1)(A) motion.").

However, the conditions that can be "extraordinary and compelling" are not limited to concerns about health or causation. They can arise from a broad range of factors including the circumstances of the case, and inequity and disparity of sentences.

***Sentencing Disparity***

The enactment of the First Step Act enables me to consider an unreasonable disparity in sentences between co-conspirators as part of the extraordinary and compelling circumstances that justify lowering Seabrook's sentence. *See e.g. United States v. Ramsay,* 538 F. Supp. 3d 407, 428 (S.D.N.Y. 2021) (citing, among other factors, sentencing disparities with codefendants as a basis for a sentence reduction).

6

Seabrook argues that he received a sentence that is so disproportionate to the sentences his co-conspirators, particularly Huberfeld, received, that the disparity between his and his co-conspirators' sentences is an extraordinary and compelling circumstance justifying his release. He is correct. The sentence Huberfeld originally received reflected an approximate equivalence between the conduct of the bribe giver, Huberfeld, and the bribe taker, Seabrook. Now that Huberfeld's sentence has been reduced to 13 months, it would be unjust for Seabrook to face 58 months in custody.

Having considered the record, a sentence of time served, recognizing the approximately 21 months Seabrook has served, would reduce the disparity between Seabrook and his co-conspirators and would be sufficient, but not greater than necessary to achieve the sentencing objectives set forth in 18 U.S.C. 3553(a), including the need to avoid "unwarranted sentencing disparities." 18 U.S.C. 3553(a)(6). This adjusted sentence reflects the seriousness of Seabrook's crime and lack of timely acceptance of responsibility, while also remedying what would otherwise be an unjust sentencing disparity between Seabrook and his co-Defendants.

## CONCLUSION

Seabrook's motion to reduce his sentence and be released from custody is granted. After release from custody, Seabrook will be subject to three years of supervised release, as set out in the original judgment in this case. ECF No. 298.

Execution of this order shall be stayed for 10 days to give the Government time to review this decision and to determine whether to seek an appeal. The Clerk shall terminate ECF No. 451 and mail a copy of this order to Defendant.

SO ORDERED.

Dated:     February 23, 2023
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge